REBECCA A. WILLIAMS *vs.* THE NATIONAL BANK OF BALTIMORE.

*Pledge of Promissory note as Collateral—Renewal of Loan note—Intention of Parties—Pledgor and Pledgee—Discharge.*

Wherever collateral security is given for the payment of a debt, the collateral will continue as a security until the debt is satisfied, unless both parties to the original contract agree to its surrender, or the pledgee in some other way discharges or releases it.

The *ex parte*, unexpressed intention of the pledgor, that the collateral shall not apply to and secure a renewal, which is in fact a mere extension of the time for payment, and not an extension of the original debt, cannot defeat the right acquired by the pledgee under the contract made by both of them when the debt was created.

After a note is once pledged, payment to the pledgor will not discharge or satisfy it, and will not constitute a defence on the maker's part against the pledgee.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the defendant offered the fourteen following prayers :

1. If the Court finds from the evidence that the note sued on was delivered by I. Parker Veazey to the plaintiff as a collateral security for a note of Gaddess Bros. for $12,000, described in the testimony of the witness Devries, dated December 12, 1884, payable four months after date to said Veasey, and by him endorsed and discounted for him by the plaintiff, and that at the matur-

ity of said note of Gaddess Bros., the check offered in evidence for $12,000, dated April 14, 1885, was given by said Veazey to the plaintiff, and that said check was paid, and that said note of Gaddess Bros. was delivered to said Veazey, and that said Veazey, prior to the giving of said check, had another note of Gaddess Bros. for $12,000, dated April 14, 1885, payable four months after date to said Veazey, and by him endorsed, discounted by the plaintiff, and that it was the intention both of the said Veazey and the plaintiff in giving and receiving said check, to pay and discharge the said note of Gaddess Bros. of December 12, 1884, and that it was their intention by the discount of the said note of Gaddess Bros. of April 14, 1885, to create a new debt of said Veazey to the plaintiff, then the plaintiff is not entitled to recover.

2. If the Court finds from the evidence that the note sued on was delivered by I. Parker Veazey to the plaintiff as a collateral security for a note of Gaddess Bros. for $12,000, described in the testimony of the witness Devries, dated December 12, 1884, payable four months after date to said Veazey, and by him endorsed and discounted for him by the plaintiff, and that at the maturity of said note of Gaddess Bros. the debt evidenced thereby was continued by successive renewals of said note, and that at the maturity of the renewal note falling due in December, 1885, a check for the amount thereof was given by said Veazey to the plaintiff, and that said check was paid, and said note of Gaddess Bros. falling due in December, 1885, was delivered to said Veazey, and that said Veazey prior to the giving of said check had a note of himself for $12,000 and interest, dated December 16, 1885, payable four months after date, discounted by the plaintiff, and that it was the intention both of the said Veazey and the plaintiff in giving and receiving said check to pay and discharge the said note of Gaddess Bros. falling due in December, 1885, and that it was

their intention by the discount of the said note of Veazey of December 16, 1885, to create a new debt of Veazey to the plaintiff, then the plaintiff is not entitled to recover.

3. If the Court finds from the evidence that the plaintiff in April, 1885, received from I. Parker Veazey the check for $12,000, offered in evidence, dated April 14, 1885, in absolute extinguishment of the note for $12,000, dated December 12, 1884, of Gaddess Bros., payable to said Veazey, and by him endorsed, and discounted for him by the plaintiff, described in the testimony of the witness, Devries, then the plaintiff is not entitled to recover.

4. If the Court finds from the evidence that the plaintiff in August, 1885, received from I. Parker Veazey the check for $12,000 offered in evidence, dated August 17, 1885, in absolute extinguishment of a note for $12,000, dated April 14, 1885, of Gaddess Bros., payable to said Veazey at four months, and by him endorsed and discounted for him by the plaintiff, described in the testimony of the witness, Devries, then the plaintiff is not entitled to recover.

5. If the Court finds from the evidence that the plaintiff in December, 1885, received from I. Parker Veazey in absolute extinguishment of the note of Gaddess Bros. for $12,000, and interest, ($246,) dated August, 1885, payable to said Veazey at four months, and by him endorsed and discounted for him by the plaintiff, described in the testimony of the witness, Devries, a check for the amount then due on said note, then the plaintiff is not entitled to recover.

6. If the Court finds from the evidence that the note of Gaddess Bros., described in the testimony of the witness, Devries, for $12,000, dated April 14, 1885, endorsed by said Veazey, and discounted for him by the plaintiff, was not intended by both said Veazey and by the plain-

tiff to constitute a continuance of the old debt evidenced by the note of Gaddess Bros. for $12,000, dated December 12, 1884, described in the testimony of the witness Devries, then the plaintiff is not entitled to recover.

7. If the Court finds from the evidence that the note of I. Parker Veazey, described in the testimony of the witness Devries, for $12,000 and interest, dated December 16, 1885, and discounted for him by the plaintiff, was not intended by both said Veazey and by the plaintiff to constitute a continuance of the old debt evidenced by the note of Gaddess Bros. for $12,000, dated December 12, 1884, described in the testimony of the witness Devries, then the plaintiff is not entitled to recover.

8. If the Court believes from the evidence that the note sued on was delivered to the plaintiff by I. Parker Veazey, as a collateral security for the note for $12,000, described in the evidence of the witness Devries, dated December 12, 1884, signed by Gaddess Bros., and endorsed by said Veazey, and discounted for him by the plaintiff, and that either I. Parker Veazey or the plaintiff did not intend that the note sued on was to be held by the plaintiff as a collateral security for any notes given in renewal of said note of December 12, 1884, or for any discounts made by the plaintiff for said Veazey, subsequent to December, 1884, and that said Veazey delivered to the plaintiff the check offered in evidence, dated April 14, 1885, and that said check was debited to said Veazey or paid, and that said note dated December 12, 1884, was surrendered in April, 1885, to the said Veazey by the plaintiff, then the plaintiff is not entitled to recover.

9. If the Court finds that the note sued on was not intended by I. Parker Veazey or by the plaintiff, to be held by the plaintiff as a collateral security for any one of the notes mentioned and described in the evidence of the witness Devries, as discounted by the plaintiff for I.

Parker Veazey in April, 1885, August, 1885, and December, 1885, then the plaintiff is not entitled to recover.

10. If the Court finds that the note sued on was not intended by I. Parker Veazey or by the plaintiff, to be held by the plaintiff as a collateral security for the note of said Veazey of December 16, 1885, for $12,000 and interest, offered in evidence, then the plaintiff is not entitled to recover.

11. If the Court believes from the evidence that the note sued on was in December, 1884, delivered by I. Parker Veazey to the plaintiff as a collateral security for a note of Gaddess Bros. for $12,000, dated December 12, 1884, payable four months after date, and endorsed by said Veazey and discounted by the plaintiff, and that the note sued on was left by said Veazey, and was intended by him and the plaintiff to remain as a collateral security for all renewals of said Gaddess note, and that said note of Gaddess Bros. was renewed at maturity in April, 1885, and that at the maturity of the renewal note it was again renewed in August, 1885, and that said renewals did not constitute payments of the respective notes renewed, and that in December, 1885, the plaintiff discounted for said Veazey the note of I. Parker Veazey for $12,000, dated December 16, 1885, offered in evidence, and that the note sued on was intended by both Veazey and the plaintiff to remain as a collateral security for said note of I. Parker Veazey, then the plaintiff cannot recover on the note sued on more than the Court may, upon the evidence, find to have been due and owing by the defendant to the said Veazey at the time of said discount in December, 1885.

12. If the Court believes from the evidence that the note sued on was endorsed by I. Parker Veazey, and delivered to the plaintiff as a collateral security for the note of Gaddess Bros., for $12,000, mentioned in the evi-

dence of the witness Devries, payable to said Veazey and endorsed by him, dated December 12, 1884, at four months, and discounted by the plaintiff in December, 1884, and that the note sued on was left with the plaintiff as a collateral security for all renewals of the said note of Gaddess Bros., and for no other purposes, and that in December, 1885, the said Veazey had his note offered in evidence for $12,000 and interest, dated December 16, 1885, and payable four months after date, discounted by the plaintiff, and that the said Veazey left with the plaintiff as collateral security for his said note the note of Gaddess Bro., for $12,246, offered in evidence, dated December, 1885, then the plaintiff cannot recover on the note sued on as collateral security for the note of the said Veazey so discounted in December, 1885.

13. If the Court shall find that the note sued on was delivered to the plaintiff as a collateral security only for the notes of Gaddess Bros., endorsed by I. Parker Veazey, and discounted by the plaintiff for said Veazey, then the plaintiff cannot recover on it as a collateral security for the note of I. Parker Veazey, dated December 16, 1885, offered in evidence.

14. If the note of Gaddess Bros., for $12,000 and interest, ($246,) dated August 17, 1885, payable to I. Parker Veazey, and endorsed by him, described by the witness Devries, was discounted for said Veazey by the plaintiff, and if at the maturity of said note, the note of I. Parker Veazey, payable to the plaintiff, dated December 16, 1885, and offered in evidence, was discounted by the plaintiff for said Veazey, and if his account was credited with the amount of said note after deducting the discount, and if said Veazey delivered to the plaintiff a check on the said plaintiff for the moneys arising from the discount of his said note and some cash, and if the said check and cash together equalled the amount of the said note of Gaddess Bros., and if said check was paid in

cash or was carried to the debit of said Veazey on his account with the plaintiff, and if the said note of Gaddess Bros. was delivered to said Veazey, then the said note of Gaddess Bros. was paid and the debt represented thereby was extinguished.

The Court (HARLAN, J.,) granted the first seven, and rejected the remaining seven prayers. The defendant excepted, and the verdict and judgment being against her, she appealed.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, and MCSHERRY, J.

*Joseph Packard, Jr.,* and *Richard M. Venable,* for the appellant.

*William F. Frick,* for the appellee.

MCSHERRY, J., delivered the opinion of the Court.

The record now before us brings this case up for the second time. The first appeal is reported in 70 *Md.,* 343.

I. Parker Veazey, by his letter of December 9th, 1884, addressed to the cashier of the National Bank of Baltimore, arranged with the appellee for a loan of twelve thousand dollars to himself, with the note of the appellant for the same amount, payable to his order, as collateral, and with the further security of Gaddess Brothers, either as accommodation drawers or endorsers of his paper. On December 12th, 1884, the bank discounted for Veazey a note of Gaddess Brothers for twelve thousand dollars endorsed by Veazey, and payable in four months, and took as collateral security the note of the appellant, dated December 13th, 1884, for twelve thousand dollars payable to Veazey in four months, and endorsed by him. This note of the appellant is the one

now in suit.    The Gaddess note matured April 12–15th, 1885, and was taken up by the proceeds of a new note of Gaddess Brothers endorsed by Veazey, for twelve thousand dollars at four months; the bank still retaining possession of the note of Mrs. Williams of December 13th, 1884, and claiming to hold it as collateral.    In August, 1885, another renewal was made in precisely the same way.    In December following Veazey desiring to renew the loan again, as appears by his letter of November 30th, but being unable to pay the discount in cash, presented a note of Gaddess Brothers payable to himself, and endorsed by him, for twelve thousand two hundred and forty-six dollars, at four months; but the bank declined to accept it in renewal, because of the increase in the amount, caused by the addition of the discount.    Thereupon Veazey drew his own note for twelve thousand dollars pledging the Gaddess Brothers' note for twelve thousand two hundred and forty-six dollars as collateral, and with the proceeds of the discount of this note of his took up the renewal of August 17th, which was then overdue.    The bank still held the note of Mrs. Williams and kept it pinned, along with the Gaddess Brothers' note, to the note of Veazey.    When Veazey's note of December 16th, 1885, matured, it was not paid or renewed.    He was then greatly involved, and in straitened circumstances, though he made some payments to the bank afterwards, aggregating about twenty-two hundred dollars.    Gaddess Brothers failed, and subsequently paid thirty per cent. of Veazey's note to the bank. The balance remaining due by Veazey to the bank, the latter now seeks to recover from Mrs. Williams on her note of December 13th, 1884.

The appellant rests her defence to the action on two grounds: First, it is insisted that the transaction of December 16th, 1885, or some of the preceding renewals of the note of December 12th, 1884, amounted in law to

Williams *vs.* National Bank of Baltimore.

a payment of the note for which the Williams' note was held as collateral; and secondly, that the Williams' note was pledged as collateral *only* for the Gaddess-Veazey note of December 12th, 1884, and that it consequently was not held for any renewal thereof. The first five instructions granted at the instance of the appellant and the fourteenth prayer relate to the defence of payment. The Superior Court, sitting as a jury, found, against the contention of the appellant, that the transactions alluded to were not intended by the Bank and Veazey to be payments of the original debt. That branch of the case, except as presented by the fourteenth prayer, is, therefore, not now before us. The sixth and seventh instructions require no special mention. The eighth, ninth and tenth prayers, which were rejected, were intended to present the second ground of defence; and the remaining three prayers, also rejected, raise other questions which will be considered later on.

On the former appeal this Court said that the question then involved was "whether the note sued on is to be considered and treated as collateral security only for the payment of the first note of Gaddess Brothers, endorsed by Veazey, or as collateral security for all the notes given in the subsequent transactions between Veazey and the Bank. This was a question of fact to be determined by the jury from the proof in the cause. It has been decided in a number of cases that it depends on the intention of the parties whether the giving of a new note extinguishes the existing debt and creates another obligation, or is to be considered as a mere renewal of the old note for which it is substituted. If the old debt is extinguished, the collateral security ceases to operate. If the old debt continues to exist there is no extinguishment of the collateral security."

The proposition announced by the eighth prayer is this: If the note sued on was delivered to the bank by

Veazey as collateral for the note of December 12th, 1884, signed by Gaddess Brothers and endorsed by Veazey and discounted for him by the bank; and if *either* Veazey or the bank did not intend that the note sued on was to be held as collateral for any note given in renewal of the Gaddess-Veazey note of December 12th, 1884, or for any discounts made by the bank for Veazey subsequent to December, 1884, then the bank could not recover. The ninth and tenth prayers present, in a different form, substantially the same proposition. Obviously these prayers, as framed, could not have been granted. They do not set forth the proposition which was intended to be relied on.

Wherever collateral security is given for the payment of a debt, the collateral will continue as a security until the debt is satisfied, unless *both* the parties to the original contract agree to its surrender or the pledgee in some other way discharges or releases it. If the debt be evidenced by a promissory note and upon the maturity of that note the parties intend by a renewal merely to extend the time for payment and nothing more, then a simple renewal so made will not extinguish the original debt. *Flanagin vs. Hambleton*, 54 *Md.*, 222. The same debt will still remain. Consequently, the collateral pledged for it in the first instance will not be released where the renewal transaction is, and was meant by both parties to be, a mere extension of the time for payment. 3 *Rand. Com. Pa.*, *sec.* 1571. It equally follows that the *ex parte* unexpressed intention of the pledgor that the collateral shall not apply to and secure a renewal which is, in fact, a mere extension of the time for payment, and not an extinguishment of the original debt, cannot defeat the right acquired by the pledgee under the contract made by *both* of them when the debt was created. The right so acquired is the right of a *bona fide* holder for value. 1 *Danl. Neg. Inst.*, *sec.* 824. And it

is a right to retain the collateral until the debt shall be paid or extinguished. Now, the eighth, ninth, and tenth prayers, as submitted to the Superior Court, did not require the jury to find that the Williams note was, under the original contract, pledged as collateral *only* for one particular Gaddess-Veazey note, but denied the right of the bank to recover if the pledge was made as security for the payment of the *first* Gaddess-Veazey note, provided *Veazey* intended that the collateral should not apply to any renewal, though the bank, in good faith, intended that it should, and though the debt, notwithstanding the renewals, remained the same throughout. This is making the question turn not on the intention of the *parties*, but upon the intention of *one* of them, and is the very error which the bank fell into in its prayer on the former trial and which caused a reversal of the judgment then appealed from. 70 *Md.*, 350. The Superior Court was, therefore, clearly right in rejecting these prayers. Had the prayers left it to the jury to find that the note sued on was, under the agreement between Veazey and the bank, pledged for the Veasey-Gaddess note of December 12th, eighteen hundred and eighty-four *only*, and that it was also agreed that Mrs. Williams' note should not be held by the bank as collateral for any note given by Veazey in renewal of or in substitution for the note of December the 12th, 1884, then it would have been perfectly proper, had the evidence sustained the hypotheses of the prayers, to have instructed the jury that the note of Mrs. Williams could not be treated as collateral security for any such renewal or substituted note, unless both parties subsequently agreed, expressly or impliedly, that it should be; because if the contract between the parties made the collateral applicable exclusively to *one* note, and to no renewal thereof, it would have required a new contract to make the note sued on liable for the payment of some other or different note;

and if either of the parties to the original contract did not assent to the making of such new agreement, then, of course, no new agreement could have existed and no recovery could be had. Whilst this is the doctrine intended to be announced, the prayers failed to present it.

The eleventh prayer, after reciting the original transaction and the several renewals, and leaving to the jury to find that the note sued on was intended by both Veazey and the bank to remain as collateral for the note of December 16th, 1885, restricted the bank, in the event of the verdict being for it, to a recovery of only the amount "the Court may, upon the evidence, find to have been due and owing by the defendant to said Veazey at the time of said discount in December, 1885." In other words, though the bank took the Williams note in good faith as collateral, and therefore for value, and by the agreement of both Veazey and itself continued to hold it for all the subsequent renewals of the same debt, yet, if, in fact, Mrs. Williams owed Veazey nothing on her note when the transaction of December 16th, 1885, took place, the bank could recover nothing from her. Such is not the law. Had Mrs. Williams paid Veazey the entire amount of the note, after its pledge to the bank, without the assent of the bank, or had she really owed him nothing on it in the first instance, the right of the bank to recover from Mrs. Williams the balance due to it by Veazey cannot be questioned. After a note is once pledged payment to the pledgor will not discharge or satisfy it, and will not constitute a defence on the maker's part against the pledgee. *Griswold vs. Davis,* 31 *Vermont,* 390.

The twelfth prayer sought an instruction to the effect that if the note sued on was left as collateral security for the Gaddess-Veazey note of December 12th, 1884, and for all renewals thereof, and for no other purposes, and that in December, 1885, Veazey had his own note for

twelve thousand dollars discounted by the bank, and left with the bank as collateral security for his said note the note of Gaddess Brothers for twelve thousand two hundred and forty-six dollars, "then the plaintiff cannot recover on the note sued on, as collateral security for the note of the said Veazey so discounted in December, 1885." The thirteenth prayer is substantially the same. The vice of these prayers lies in the assumption that the transaction of December 16th, 1885, was not a continuation of the original indebtedness because differing from the previous extensions merely in form. They assumed that the note of December 16th created a new and entirely different obligation, without submitting to the Court sitting as a jury to find whether the parties intended it to be so or not. If the Veazey note of December 16th really represented the same indebtedness originally created by the note of December 12th, 1884, and was intended by both the parties to it to do so, the bank was undoubtedly entitled to hold the collateral for the last note as well as for the first. These prayers entirely ignore the essential element of intention, and rely on the mere form of the transaction. They were consequently erroneous and were properly rejected.

The fourteenth prayer asked an instruction to the effect that if, upon the maturity of the note of Gaddess Brothers endorsed by Veazey, and dated August 17th, 1885, a note of I. Parker Veazey for twelve thousand dollars, dated December 16th, 1885, was discounted by the bank for Veazey ; and if his account was then credited with the net proceeds of that discount, and if Veazey drew his check, payable to the bank, on those proceeds for the amount realized by the discount of his note, and added sufficient cash to make up the amount due on the note of August 17th, and if the check was carried to the debit of Veazey, and the Gaddess Brothers' note of August 17th was delivered to Veazey—"then the said

note of Gaddess Brothers was paid and the debt represented thereby was extinguished." And this, too, without the slightest reference to the *intention* of the parties, and, in fact, even though they might have designed the transaction ot December 16th to be a mere renewal or extension, and not a payment at all. The prayer, wholly ignoring the element of intention, announces the proposition that the acts therein recited amounted, in law, to a payment and extinguishment of the debt for which the Williams note was held as collateral. This is in conflict with what was determined on the former appeal, and is equally inconsistent with the second instruction granted in this case, wherein, upon substantially the same facts, the question of intention, as applicable to the subject of payment, was explicitly left, at the instance of the appellant, to be found by the Court before those facts could be held to establish a payment.

Finding no errors in the rulings excepted to, the judgment of the Superior Court must be affirmed.

*Judgment affirmed.*