### WISE v. WILLIAMS et al.

(Circuit Court, S. D. New York. June 2, 1908.)

1. WITNESSES—COMPETENCY—CONVICTION OF CRIME—EFFECT.

Rev. St. § 5392 (U. S. Comp. St. 1901, pp. 3653, 3654), providing that every person convicted of perjury shall thereafter be incapable of giving testimony in any court of the United States until such time as the judgment against him is reversed, excludes a witness convicted of perjury under the laws of the United States from giving evidence in any United States court, whatever the law of the state where the trial had on the subject may be; but as to all witnesses convicted of crimes other than perjury their competency is determined by the laws of the state where the trial is had, under Act July 6, 1862, 12 Stat. 588, c. 189, declaring that the laws of the state in which the court shall be held shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law in equity, and in admiralty.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 109–113.

Competency in federal courts, following state practice, see notes to O'Connell v. Reed, 5 C. C. A. 602; Hinchman v. Parlin & Orendorff Co., 21 C. C. A. 278.]

162 F.—11

2. SAME—FALSE REPORT TO COMPTROLLER.

A witness convicted of making false national bank reports under oath to the Comptroller of the Currency, being a competent witness in the courts of New York, is also a competent witness in the courts of the United States sitting in New York, under Act of July 6, 1862, 12 Stat. 588, c. 189, declaring that the competency of witnesses in the courts of the United States shall conform to the rules of the state in which the court is held.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 109–113.]

3. BANKS AND BANKING—NATIONAL BANKS—DUTY OF RECEIVER.

Where a receiver, on taking possession of the assets of a national bank, found its affairs in confusion and found stock pledged to it as collateral with no definite and certain agreement as to the particulars of the pledge, it was his duty to ascertain and assert fully the obligations and liabilities of the pledgor to the bank and the purpose and extent of the pledge.

4. PLEDGES—EXTENT OF PLEDGE—RENEWAL OF OBLIGATION.

Where certain corporate stock was pledged to a bank to secure a note, the stock was not relieved of the debt evidenced by the note by the fact that the note was subsequently displaced by a renewal note which was invalid as a forgery.

In Equity.

Action to have it declared what lien, if any, the defendant Christopher L. Williams, as receiver of the Fredonia National Bank, has upon 500 shares of the capital stock of the defendant J. H. Bunnell & Co., a corporation, and which shares were owned by plaintiff's intestate, Albert J. Wise, and pledged by him, it is alleged, with said bank as a continuing and collateral security for certain promissory notes upon which said Wise was liable to the bank either as maker or indorser, and other obligations, and to have the amount ascertained and fixed, and to have it declared that such receiver or the bank he represents has no lien thereon whatever, and for a decree awarding the possession of such stock to complainant, and directing a transfer thereof to complainant as such administratrix. This, in general, is the object of this action. The defendant receiver claims a large lien thereon, and that said stock was pledged by Wise in his lifetime for certain debts and obligations due the bank which have not been paid.

Robert H. Griffin, for complainant.

Blandy, Mooney & Shipman, for defendant Williams, as receiver, and the bank.

RAY, District Judge (after stating the facts as above). The shares of stock, 500 shares of the capital stock of J. H. Bunnell & Co., a corporation, were pledged by Wise to the Fredonia National Bank, and held by it when Wise died, and when the bank went into the hands of this receiver. The administratrix claims that this lien was for a specific indebtedness aggregating about $20,000, and that she has discharged same and is entitled to a transfer and delivery of the stock, while the receiver contends that the transfer and pledge to the bank was general and as security for the payment of other debts and claims aggregating now something like $18,000, and which indebtedness, it is conceded, has not been paid. This contention presents a question of fact, and after reading the evidence different jurors or judges might arrive at different conclusions. As the Circuit Court of Appeals is in no way bound or affected by the decision of the lower court, it will serve no good purpose to go over this evidence and give my reasons for having reached the conclusion I have. I am of the opinion, and

hold, that the shares of stock were assigned and pledged as claimed by the receiver, and for the security of the bank generally as to the indebtedness now in controversy.

Objection is made that the evidence of Green, now in state's prison at Auburn, N. Y., serving a sentence pronounced by the District Court of the United States on a plea of "guilty" to counts 1, 2, 3, and 13 of a certain indictment found by a federal grand jury charging Green with "making false entries in reports to the United States Comptroller, verified by the oath of said Frederick R. Green," is incompetent, and that he was and is disqualified by reason of such conviction. The federal statute denominates the offense to which Green pleaded guilty a "misdemeanor." It is the offense of making a false report, not the crime of perjury. The Congress of the United States has said that a person convicted of perjury is incompetent to give evidence. Sections 5392, 5393, Rev. St. (U. S. Comp. St. 1901, pp. 3653, 3654), are as follows:

"Sec. 5392. Every person who, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, and shall be punished by a fine of not more than two thousand dollars, and by imprisonment, at hard labor, not more than five years; and shall, moreover, thereafter be incapable of giving testimony in any court of the United States until such time as the judgment against him is reversed.

"Sec. 5393. Every person who procures another to commit any perjury is guilty of subornation of perjury, and punishable as in the preceding section prescribed."

This, of course, excludes a witness convicted of perjury under the laws of the United States from giving evidence in any United States court, whatever the law of the state where the trial is had on the subject may be. But as to all witnesses convicted of crime other than perjury their competency is determined by the law of the state where the trial is had, viz.:

"The laws of the state in which the court shall be held shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law, in equity and in admiralty." Act July 6, 1862, c. 189, 12 Stat. 588.

In New York, as Green is a competent witness in any action in the courts of this state, he is a competent witness in any case in the courts of the United States tried in such state, and hence a competent witness in this case. Green is a stockholder in and a creditor of the bank. He is indirectly interested in the event of the action, but he is not a party thereto. Hence he was competent to give the testimony as to conversations and transactions with Wise, complainant's intestate. Potter v. National Bank, 102 U. S. 163, 164, 26 L. Ed. 111; King v. Worthington, 104 U. S. 44, 50, 26 L. Ed. 652; Bradley v. U. S., 104 U. S. 442, 443, 26 L. Ed. 824; Monongahela Nat. Bank v. Jacobus, 109 U. S. 275, 277, 3 Sup. Ct. 219, 27 L. Ed. 935; Snyder v. Fiedler, 139 U. S. 478, 480, 11 Sup. Ct. 583, 35 L. Ed. 218. See very last para-

graph of the opinion in that case. Section 858, Rev. St. U. S. (U. S. Comp. St. 1901, p. 659) as amended by Act June 29, 1906, c. 3608, 34 Stat. 618 (U. S. Comp. St. Supp. 1907, p. 227) now reads:

"The competency of a witness to testify in any civil action shall be determined by the laws of the state or territory in which the court is held."

This is a material change. Section 829, Code Civ. Proc. N. Y., applicable to such cases as this, expressly provides that:

"A person shall not be deemed interested for the purposes of this section by reason of being a stockholder or officer of any banking corporation which is a party to the action or proceeding, or interested in the event thereof."

It seems to be true that the receiver has claimed this stock as pledged for certain debts, which claim he has in part abandoned. This, however, does not militate against the receiver in any way. There is no evidence he has resorted to dishonest practices or made claims in bad faith. When a receiver takes possession of a bank and finds its affairs in a confused condition, stock in its possession and held by it as collateral, with no definite and certain written agreement as to the particulars of the pledge, he would not do his duty unless he should ascertain and assert fully the obligations and liabilities of the pledgor to the bank, the purpose and extent of the pledge, etc. It is not at all surprising that he has made a broader claim than he can, on a trial or in the light of subsequent developments or information, sustain. It is, of course, unfortunate for the receiver, acting in the interest of the creditors, etc., of the bank, that he was compelled to rely largely on the testimony of persons mixed up in shady transactions, one of whom is serving a sentence for criminal misconduct in the management of the affairs of this bank. Testimony from such persons is to be carefully scrutinized and cautiously credited. However, it is not to be disbelieved unless the court is satisfied it is not entitled to any credit. Here there is corroboration.

As to two notes purporting to be signed or indorsed by Wise it is claimed that his signature is a forgery; that is, not his genuine signature. I think this contention correct, and so find; but I do not see how it is material in this case as to the $2,000 note, the original of which was protested. The receiver is not suing the estate on the notes. The question here is: Did Wise owe the bank, or was he liable to the bank, or were others liable to the bank, and did Wise pledge this stock to the bank as security for such indebtedness, and has that indebtedness been discharged and the lien or claim on the collateral released? The receiver found certain notes, etc., with the bank representing this indebtedness. He assumes them to be genuine. He asserts the indebtedness and pledge in this suit, which is brought to have it declared there was no indebtedness of Wise for which this stock was pledged, and says that two notes represent a part of that indebtedness. It is not denied that the indebtedness of Wise existed, that he gave notes for the amounts represented thereby, and that these purport to be renewal notes. It is not shown that the original notes have been paid, or that they were paid by Wise, or some one for him. It is shown that when these notes came due, or one was coming due and the other past due, a certain party representing and acting for the

bank went to Wise, who was very sick, suffering from serious injuries and a serious surgical operation, from which he soon thereafter died, and that business was transacted, and these notes, following that interview, were put in the bank as renewals. Concede that Wise did not personally sign these notes, the signature of which is disputed; concede that he did not authorize any one to sign his name thereto or thereon—the indebtedness of Wise to the bank remains, and the lien remains as to the duly protested $2,000 note. I therefore hold that, the indebtedness appearing and it not being shown it was paid, the lien remains, and the right of the bank to hold the stock remains, as to that note, until it affirmatively appears that the indebtedness of Wise to the bank represented by the original note has been paid or the pledge of the stock otherwise released. As to the $4,500 note the defendant claims that Wise was in fact the maker, that it was an accommodation note made for his benefit and that he had the proceeds, and that protest was immaterial. I do not think the evidence sustains the contention.

Entertaining these views on all the evidence and exhibits, there will be a decree stating the different liabilities for which these shares of stock are pledged and held, excluding the $4,500 note, Exhibit X the amount of principal due and unpaid on each, the amount of interest to date of decree due or accrued on each, the total of each, and also of all, and providing that, on the payment of such sum by the complainant within 20 days of service of a copy of the decree, the shares of stock be transferred and delivered to her. In default of such payment the receiver will be at liberty to dispose of same in accordance with law. The decree will also enjoin the receiver from otherwise disposing of same until the expiration of said 20 days.