In re GOODHUE MOTOR CO., Inc.

District Court, D. Maryland.   October 8, 1928.

No. 5189.

James P. Walsh, of Baltimore, Md., for Century Trust Co.

Howard B. Stocksdale, of Baltimore, Md., for trustee.

WILLIAM C. COLEMAN, District Judge. The question in this case is whether a trustee in bankruptcy is entitled to have declared void as a preference under section 60b of the Bankruptcy Act (11 USCA § 96 (b), a transfer made, as collateral for a loan 'to a creditor of the bankrupt, of certain automobiles and accounts receivable, or whether such creditor is to be allowed to liquidate the loan by sale of the collateral so acquired. The material facts are these:

On January 10, 1928, an involuntary petition in bankruptcy was filed against the Goodhue Motor Company, Inc., and on January 30th it was adjudicated a bankrupt. For some time previous to the proceedings in bankruptcy, the Goodhue Motor Company had been accustomed to carry an account with, and to borrow from, the Century Trust Company of Baltimore, as a result of which, on or about October 31, 1927, the Motor Company was indebted to the Trust Company in the amount of $12,200, represented by notes, some secured and some unsecured.

At that time, the Trust Company loaned the Motor Company $2,200 more, which constituted an entirely new indebtedness, for which a new note was then given, and at the same time there was a verbal agreement that this new advance was to be secured by a pledge from the Motor Company of some automobiles and of all of its accounts receivable. Simultaneously the Trust Company was given a list of the assigned accounts.

There is no evidence, however, that at that time the number of the cars or their description was stated. It was not until November 15, 1927, that the Trust Company actually took title to any automobiles by assignment of the requisite title certificates in compliance with the Maryland Motor Vehicle Law, and, in fact, formal assignments appear never to have been perfected to two of the automobiles. On November 21st the note of October 31st was surrendered, and a collateral note for the same amount, reciting the title numbers of six automobiles and the amount of the accounts receivable as listed by the Trust Company on October 31st, was substituted. On the same date a chattel mortgage covering these six cars was also given, and recorded on November 28th. The statement of accounts receivable was revised as a result of an audit of the Motor Company's books; proper entry of the assignment was noted in these books, and the revised statement was furnished the Trust Company on November 26th. The automobiles were not actually delivered to the Trust Company until on or about December 8th. It is uncontradicted that all of this collateral was agreed to be pledged, and was subsequently pledged, against the new loan of $2,200, and that only.

The facts in this case establish that the loan, as a security for which the cars and accounts were ultimately pledged, was a present consideration. Therefore it is immaterial that both the oral agreement to pledge, and the subsequent transfer by the pledgor to the pledgee of the agreed property, are both within the four-months period. The sole question for determination in the present case is: Did the Trust Company, on October 31st, obtain an equitable lien on the property then agreed to be subsequently pledged to it, which is enforceable by virtue of the subsequent pledge having been made, even though without new consideration? And, if so, what is the status under the Bankruptcy Act of a lien so acquired, even though within the four-months period?

With respect to the first question, while

possession is of the essence of a pledge, an agreement to pledge property, made in good faith to secure a present loan, supported by subsequent transfer of property, is valid and recognized under section 67d of the Bankruptcy Act (11 USCA § 107[d]) to the extent of the present consideration, if such agreement be valid under the law of the state where made. There is no doubt that Maryland recognizes equitable liens upon chattels, but the property which the lien purports to cover must be specifically designated. Textor v. Orr, 86 Md. 392, 38 A. 939; Goldsborough v. Tinsley, 138 Md. 411, 113 A. 861. In the present case, there appears to have been no recital at the time of the original agreement of just what automobiles were to be pledged. The testimony produced both by the trustee and by the Trust Company is vague, to say the least, on this point. There appears to have been no list of the automobiles supplied at the time, and, at most, a verbal statement that the company's unincumbered, used automobiles would be transferred when title documents thereto could be perfected. Beyond this, there appears to have been no identification of the cars. The situation is otherwise with respect to the accounts receivable, because a list of these was supplied. The fact that the list was subsequently revised, as a result of a thorough audit, is not controlling. In the nature of things, it is to be assumed that the amount of these accounts would vary, due to payment, etc., and it was understood that the original list was subject to revision.

█ Of course, the subsequent transfer of the property agreed to be transferred must be actual and complete, in order to validate an equitable lien. Tomlinson v. Bank of Lexington (C. C. A.) 145 F. 824 (Fourth Circuit); Union Trust Co. v. Bulkeley (C. C. A.) 150 F. 510; In re Harvey (D. C.) 212 F. 340. With respect to the automobiles, there is no difficulty on this point, because all indicia of control and ownership was surrendered. But, as just stated, the court does not believe the evidence supports a finding that any equitable lien was created in the first instance with respect to the cars, but there was a valid transfer of the accounts receivable. The assignment of these accounts, the court believes, on the authority of Chapman v. Emerson, 8 F.(2d) 353, and In re Almond Jones Co. (D. C.) 13 F.(2d) 152, the former a decision of the Circuit Court of Appeals for this circuit, and the latter a decision of this court, is adequate to constitute a transfer. The test as laid down in these cases, in the absence of any Maryland statute on the subject, is whether or not the actual arrangement was such that the assignee acquired actual dominion over the assigned accounts and their proceeds. The agreement to assign was effective to pass to the Trust Company the ownership of the accounts, and the subsequent entry of the assignment upon the bankrupt's books, and the express promise to pay over to the assignee all money that might be collected on the accounts, confirmed the transfer.

█ It should be noted at this point that the situation is not altered by the fact that the original note of October 31st was surrendered on November 21st, and a new collateral note for the same amount then given, because, under the Maryland law, collateral pledged on a note is not released by the renewal of such note. Flanagin v. Hambleton, 54 Md. 222, Williams v. National Bank, 72 Md. 441, 20 A. 191. Nor does the question of intervening creditors and their rights arise, in view of the construction which the Court gives to the assignment.

Thus, since the Trust Company acquired, on or about October 31st, the accounts receivable by an assignment which is recognized as valid under the Maryland law, such a transfer must be upheld under the Bankruptcy Law, and does not constitute an illegal and voidable preference. Chapman v. Emerson, and In re Almond Jones Co., supra.

Since the matter is before the court on a petition by the Trust Company to be allowed to dispose of the automobiles and to liquidate the accounts receivable, and also on a cross-petition by the trustee, asking that the transfer be set aside as a preference, the court will sign an order granting the petition of the Trust Company with respect to the accounts receivable, and dismissing it with respect to the automobiles, and will grant the petition of the trustee with respect to the automobiles, but will dismiss it with respect to the accounts receivable, with the proviso, of course, that, should the Trust Company realize from the liquidation of the accounts receivable any sum in excess of its indebtedness against which said accounts are pledged, such excess is to be surrendered to the trustee for the benefit of the bankrupt. It does not appear, however, that there can be any such excess.