UNION NATIONAL BANK v. P. A. WATERS et al.

Eastern Section. February 23, 1929.

Petition for Certiorari denied by Supreme Court, June 15, 1929.

J. Alvin Johnson, of Knoxville, for appellant.

Gamble, Crawford & Goddard, of Maryville, for appellees.

DeWITT, J. The Union National Bank of Knoxville has appealed from a decree denying a recovery against P. A. Waters, J. D. Waters and D. O. Waters, of a balance of about $1000 and interest and attorney's fees upon a note of defendants dated April 1, 1922, payable on or before December 30, 1922, for $5000 and interest, to the order of Gibson Construction Company. The bank sued as a bona-fide owner and holder, alleging that it became the pledgee of this note on September 24, 1922; and that on June 26, 1927 it became the absolute owner by a sale of the note under the terms and provisions of a note for $1500 executed to it on September 24. 1922 by Gibson Construction Company, in which it was recited that this note sued on was pledged as collateral security. The defendants denied that the bank was a bona-fide, innocent owner or holder: and they pleaded that on October 4, 1922 they fully satisfied the note sued on by paying the balance due thereon.

On September 24, 1922 Gibson Construction Company gave to the bank its promissory note for $1500, due in thirty days either for renewal of a note or for money then borrowed, and it pledged as collateral this note of defendants, the principal note containing the recital:

"Having deposited herewith the following as collateral security for the payment of this note, and of any other note, claim or indebtedness now or hereafter held against the undersigned, or either of them, by said bank or any lawful holder of this note to-wit note of P. A., J. D., and D. O. Waters $5000 attd less credits."

The bank at that time held another note of Gibson Construction Company. for $8500 for which no collateral was pledged but which was endorsed by J. R Gibson.

The note of defendants sued on was given for an interest in whole or in part in a contract in Sevier County; and it is undisputed that on October 4, 1922 the defendants sent to Gibson Construction Company their check for the balance due on said note, that the check was deposited by Gibson Construction Company in the Union National Bank and was duly honored on October 6, 1922 by the drawee bank. But the defendants never received back the note in payment of which the check was thus given.

On October 4, 1922, when the note for $1500, for which this note was pledged as collateral, fell due, it was cancelled and delivered

by the bank to the Gibson Construction Company, upon said Company executing to the bank another note for $1500 due sixty days after date, without any repledge of the note sued on or any reference to said note in the new note; and thereupon from time to time Gibson Construction Company as the note for $1500 would fall due, executed another note for $1500 without any repledge of this note or reference to it in the note so given until July 21, 1923. On that day Gibson Construction Company executed a note for $1500 pledging this note sued on as collateral therefor; and when said note fell due it executed another note for $1500 but without any repledging of this note or reference thereto in said new note. On February 17, 1924 Gibson Construction Company gave to the bank its note for $1000, pledging this note as collateral security, and when said note fell due it executed another note for $1000 without pledging this note sued on; and on July 16, 1924 it executed a renewal note for $1000 pledging this note as security; and likewise on October 14, 1924, January 12, 1925; March 13, 1925, May 12, 1925; August 10, 1925; and November 8, 1925.

At no time had the bank surrendered the possession of this note to the Gibson Construction Company or to the defendants. It was not until about March 19, 1925 that the defendants learned that this note had ever been pledged to the Union National Bank. Defendant P. A. Waters thereupon in person informed the cashier of the bank that the defendants had paid said note in full to the Gibson Construction Company; and thereafter the bank from time to time as aforesaid, renewed the note of the Gibson Construction Company, but its liability was finally discharged in bankruptcy.

The Chancellor found that from October 4, 1922 until July 21, 1923 the Union National Bank was not the lawful holder of this note; that the note dated September 24, 1922 for which this note was first pledged had been cancelled and delivered to the Gibson Construction Company; that when this note was again pledged it was not a continuation of the original pledge but a repledge of said note; that said note had thus been paid; that the bank was not an innocent purchaser for value thereof, and not a holder in due course; that it did not acquire said note before maturity so as to render it a holder in due course without notice of the fact that it had been paid. He therefore dismissed the bill.

We are unable to concur in these conclusions of the Chancellor.

The bank acquired, as pledgee, a lien upon the note sued on in September, 1922. It thus became unquestionably a bona-fide holder for value. It is significant that it has never surrendered possession of this note. The applicable rule is stated in Jones on Collateral Securities, sec. 355a, as follows:

"A pledge ordinarily secures any renewal of the debt. When a promissory note secured by a pledge becomes due and a new note is given in renewal, the pledge remains as security for the new note, in the absence of anything showing that the parties intended that the original should be regarded as paid or discharged. When it appears that it will be for the benefit of the creditor that the old debt should be kept alive, the presumption of payment, by the taking of a new note for the old note, does not arise, and the original debt is not discharged." Citing Cotton v. Atlas National Bank, 145 Mass., 43, 12 N. E., 850; Meeker v. Waldron, 62 Neb., 689, 87 N. W., 539; Selma Bridge Co. v. Harris, 132 Ala., 179, 31 So., 508; Wise v. Williams, 162 Fed., 161; Robinson v. Stiner, 26 Okla., 272, 109 Pac., 238; Morehead v. Citizens Deposit Bank, 130 Ky., 414, 113 S. W., 501, 23 L. R. A. (N. S.), 141.

The following authorities also support this rule: Williams v. National Bank, 72 Md., 441, 20 Atl., 191; Coal and Coke Co. v. Bank (Ala.), 53 So., 997; Holland Trust Co. v. Waddell, 26 N. Y. S., 980.

A principle underlying this rule is that it is the debt which is secured, and the note is mere evidence of the debt—so that no amount of evidence of the debt could destroy the security. A mere change as to the evidence of the debt does not affect it. In Coal and Coke Co. v. Bank, supra, the court, in applying this principle, said that if nothing was said about the security when the new note was taken, the security for the debt remained just as it was before; that in the absence of a contract either express or implied, releasing the security, it would remain. In that case a new note was taken without recital of a pledge of collateral or proof of any oral agreement that it was to remain as security—a precise analogy to the case before us.

This rule is based upon another rule, that the taking of a renewal note is not a payment of the original instrument in the absence of an understanding or agreement to that effect. 8 C. J., 569; Jones on Collateral Securities, sec. 541; 5 Uniform Laws Ann., 414. In Dies v. Wilson County Bank, 129 Tenn., 89, 165 S. W., 248, Ann. Cas., 1915A, 1090, it is said that this rule has been modified in Tennessee to the extent that a presumption is raised that the old note is extinguished by the later one; but in that case the old note was retained, and emphasis was placed upon the controlling effect of proof of an express agreement of the parties touching extinguishment or payment or the reverse—citing Bowman v. Rector, 59 S. W., 389. The court further said:

"The intention of the obligor that the existing debt should be discharged must be concurred in by both debtor and creditor; and where the intention is shown, as in the case at bar,

to have been to the contrary, it seems clear that neither nova-
tion nor payment resulted.''

In the later case of Bank v. Yowell, 155 Tenn., 430, 1 S. W. (2d),
526, our Supreme Court sustained a recovery on the original note
which had been renewed by a note which was materially, but not
fraudulently, altered. The court granted this relief by re-announc-
ing the common-law rule that any commercial paper delivered or
promissory note of the debtor executed is not an extinguishment of
the original demand, in the absence of an agreement between the
parties. Citing 8 C. J., 569; 30 Cyc., 1194. This principle was ap-
plied in Gates v. Union Bank, 12 Heisk., 325, in which the court
said:

"The question depends upon the intention of the parties,
and that intention is to be ascertained by the facts and circum-
stances accompanying the discount, and the former dealings of
the parties of the like character. If a bank discount a note for
a customer with the understanding that when it falls due he
may have a similar discount to enable him to pay and take up
the first, and afterward a series of notes of the same amount,
and with the same parties, are regularly discounted on the
days when the successive notes fall due, said notes being regu-
larly paid and taken up on those days, the conclusion is irre-
sistible that these several transactions were intended by the
parties to be renewal discounts, the considerations for the first
discount running through and entering into all the successive
renewals and discounts.''

Supporting this rule is the evidentiary proposition that novation
is never presumed; that the burden of proof to show novation of
a note by a later note is upon him who asserts that there has been
a novation. Dies v. Bank, supra; Sharp v. Fly, 9 Baxt., 4; Lover
v. Bessenger, 9 Baxt., 393; Gregory v. Beasley, 7 Tenn. Apps., 467;
29 Cyc., 1139. At last, the question of payment and extinguishment
of a note by taking a new note depends upon the intention of the
parties; and where the intention is to be ascertained only from the
taking of a new note and surrender of the old one (the collateral,
too, being retained) it must be considered as operating only to
extend the time of payment of the original debt. Griffin v. Long,
96 Ark., 268, Ann. Cas., 1912B, 622, 131 S. W., 672, 35 L. R. A.,
(N. S.), 855. This conclusion is strengthened by the further pre-
sumption that the creditor never intends to give up his security.
Cotton v. Atlas Bank, supra.

As the bank, during the entire period of these transactions, held
other indebtedness of Gibson Construction Company, evidenced by
notes for borrowed money, the provision, in the note for $1500 of
September 24, 1922, pledging the note sued on "as collateral secur-

ity for the payment of this note and of any other note, claim or indebtedness now or hereafter held against the undersigned, or either of them, by said bank," must be given force and effect. Under this contract the bank, having originally acquired a lien as a bona-fide holder, could retain this note as security for the payment of the other obligations; and it appears that they, to the extent of ten to twelve thousand dollars, have never been paid. The language of this pledge is plain and unambiguous, and the transactions appear to have been usual and ordinary banking transactions. Upon this feature the case is controlled by the decision of our Supreme Court in Fourth National Bank v. Stahlman, 132 Tenn., 367, at page 410, 178 S. W., 942, L. R. A., 1916A, 568.

We are referred to the case of Merchants Bank and Trust Co. v. Thurman, 10 Fed. (2d), 141, as holding that under such circumstances the bank was not an innocent purchaser; but the vital difference is that in that case the lien of the original pledge had been lost by surrender of the collateral (an acceptance) and when it was repledged it was after maturity of the collateral paper and it had been paid to the pledgor. Possession of the note herein sued on has never been lost or surrendered.

The defendants unfortunately paid the balance then due on this note to parties not holders or authorized agents for the purpose of receiving payment, and who did not have the note in their possession. By such payment the instrument was not satisfied. The general rule is applicable that the maker of a negotiable promissory note can satisfy it only by payment to the holder or to his duly authorized agent for that purpose. Gosling v. Griffin, 85 Tenn., 737, 3 S. W., 642; Griswold v. Davis, 125 Tenn., 223, 141 S. W., 205; Cline v. Plyly, 3 Tenn. Apps., 292.

It results, therefore, that the complainant is entitled to a decree against the defendants for the balance due on this note, with interest and an attorney's fee of ten per cent. of said amount, as provided in said note, and which we deem to be reasonable. The decree of the Chancellor is reversed and a decree will be rendered as aforesaid. The costs of the cause, including the cost of the appeal will be adjudged against the defendants.

Faw, P. J., and Crownover, J., concur.