In re BLISS et al.

MID–CITY WHOLESALE GROCERS v. SCHREIBER.

No. 7641.

Circuit Court of Appeals, Seventh Circuit.

Dec. 17, 1941.

Leo L. Stone, of Chicago, Ill., for appellant.

Edward S. Foltz, Jr., of Rockford, Ill., for appellee.

Before EVANS, SPARKS, and MINTON, Circuit Judges.

SPARKS, Circuit Judge.

Appellant appeals from an order of the District Court approving and confirming an order of a referee in bankruptcy denying preference to its claim against the bankrupt and allowing the claim as an unsecured one, and directing the trustee to hold the proceeds of certain vouchers upon which appellant's claim to preference was based, as assets of the estate free and clear of any claim of appellant.

The basis for the claim of preference arose out of what appellant denominates an equitable lien on certain funds due the bankrupt and collected by its trustee after bankruptcy. The bankrupt was a partnership engaged in the retail grocery business. Appellant was a corporation engaged in the wholesale grocery business and had for some time sold goods to the bankrupt. In the middle of June, 1939, the bankrupt owed appellant about $4,000 which had been due for some time. At that time one Enderle, a salesman for appellant, informed one of the partners, R. R. Bliss, that they would have to pay cash for any future deliveries. Thereupon, Enderle testified, Bliss stated that they had no cash with which to pay for goods, but they did have relief tickets which they would assign to appellant. These tickets were given to the bankrupt for groceries furnished to persons on relief, and upon delivery to the proper agency, payment was made by check of the agency. The record is not at all clear as to the business method followed, but it appears that the order of each customer obtaining relief was made out in triplicate, with a white original and pink copies, and that before collection could be made from the relief agency it was necessary to present the white original to the agency. A pink copy of each order seems to have been retained by the grocer furnishing the goods to the customer.

Of course it was necessary to have goods in stock with which to fill the relief orders, hence the parties arranged that the bankrupt would turn over relief tickets to Enderle after goods were delivered by appellant (although he seems to have had only the pink copies), and Enderle was to go to the Relief Office and collect the checks. As an authorization to that office to pay the checks to Enderle, Bliss wrote the following letter to the Rockford Township Relief Office, dated May 12, 1939:

"Because of an adjustment in the duties of the different partners in our company, I am asking that your office release our checks to Harold Enderle, who is also a partner of our firm, starting with June 15th issue until further notice from me."

Enderle stated that the Relief Office notified the bankrupt when the checks were ready, and the bankrupt notified him. He then went over to collect. He said he had collected a number of checks, and had endorsed them in the name of the bankrupt and turned them over to appellant. In response to a question of the referee, he said that he knew of a regulation against the assigning of relief orders, and while he knew the regulations were not being adhered to, he did know that they were in force, and because of that, they carried the matter as they did. The record also showed that Enderle had at one time owned a one-fortieth interest in the business of the bankrupt, but that he had never been an active member of the partnership, and he had sold his interest to one of the partners in January, 1939, because he thought there was too much risk involved.

An involuntary petition in bankruptcy was filed on October 9, 1939. Some time prior to that date, Enderle was instructed by appellant's credit man to obtain written instruments pertaining to their arrangement, and he therefore had Bliss execute undated assignments of the amounts due for relief orders on September 12, 18, and 25, and October 2 and 9. Each assignment recited the fact of the sale of groceries and delivery on the agreement of the co-partners to assign the moneys due from the Town of Rockford in a specified sum (the total of which amounted to $1,445.58), varying in all cases from the amounts due for the groceries which aggregated $1,401.39. Enderle could not remember the date when he obtained the assignments, nor whether it was the same as that of the bankruptcy about which he read in the newspaper. However, he did say they were all executed at the same time, and the record shows that the last one was for orders filled as of October 9, and Enderle elsewhere stated that the assignments were all signed "late in the afternoon, around 4, 4:30 or 5 o'clock."

After appellee's appointment as trustee in bankruptcy, he collected from the relief agency all the moneys then due and owing to the bankrupt, including the sums covered by the alleged assignments. Appellant thereupon filed its petition praying that appellee be directed to pay over to it

the sums covered by its assignments. Upon disallowance of the claim except as a general one, appellant took this appeal.

Appellant contends that the foregoing facts give rise to an equitable lien on specific property, enforcible against the trustee in bankruptcy inasmuch as it was created prior to the debtor's bankruptcy, and that the evidence conclusively shows that the goods for which the claim was made were sold and delivered in reliance on the fact that the funds represented by the relief tickets were to be transferred with the absolute right to receive the said funds as its own property in payment of the transactions.

■ We cannot agree with appellant's construction of the evidence. We think the evidence shows no more than a secret agreement, carried out by the parties for several weeks, to pay for goods out of a special fund becoming due on the sale of those goods. The mechanics of the transaction in no way amounted to an assignment. This seems clear to us according to the rules discussed in a case relied upon by appellant, In re Goodhue Motor Co., decided by a Maryland District Court, 28 F. 2d 402. Appellant cites this as holding that where a creditor secures an oral agreement for a pledge of accounts receivable with a list of assigned accounts as security for a loan as a present consideration, he thereby obtains an equitable lien on the accounts receivable, and it is immaterial that both the oral agreement and the subsequent transfer by the pledgor to the pledgee of the agreed property are within the four-month period. In reaching that conclusion, however, the court called attention to the fact that "the subsequent transfer of the property agreed to be transferred must be actual and complete, in order to validate an equitable lien," and that the test is "whether or not the actual arrangement was such that the assignee acquired actual dominion over the assigned accounts and their proceeds." This means that even where there is a present consideration, a mere secret agreement or arrangement, unaccompanied by any indicia of transfer is insufficient to create an equitable lien.

■ Granting that consideration did pass from appellant to the bankrupt after the making of the oral agreement, do the facts here present prove that there was a valid assignment of the funds, or an equitable lien on the proceeds thereof? The record does not show that there was ever an entry on the books of the bankrupt indicating the alleged assignment; the regulations of the agency whose debt was alleged to have been assigned forbade such assignment; the purported notice to it of the alleged assignment revealed no interest of the alleged assignee in the debt, but instead, it stated that the alleged assignee's agent was to collect the checks as a partner of the creditor. The delivery of the pink tickets to appellant gave no more than a memorandum of the amounts due from the relief agency, and created no right in appellant to collect those amounts—it is clear that the bankrupt at all times retained the white tickets which alone carried dominion over the fund.

■ The written assignments relied upon were entirely at variance with the practice followed by the parties prior to the bankruptcy; they bore no date, but we think the record otherwise sufficiently established their date as that of the filing of the petition in bankruptcy; even when Enderle obtained them, he did not obtain the white originals of the orders which had to be presented for collection of the relief checks. We think these facts are far from showing the dominion over the fund necessary to validate an equitable lien against the funds in the hands of the trustee in bankruptcy, even though consideration did pass from the creditor to the bankrupt after the agreement was made. See Lone Star Cement Corp. v. Swartwout, 4 Cir., 93 F. 2d 767. See also Annotation, 101 A.L.R. 81 at p. 82, where the annotator comments on the rules as to equitable assignments: "Thus, while no particular words or form of instrument are necessary to effect an equitable assignment * * * the doctrine as enunciated by the Supreme Court of the United States (Christmas v. Russell, 14 Wall. 69, 20 L.Ed. 762) presupposes a present appropriation or transfer of the fund (as distinguished from a mere executory promise or personal covenant to pay out of the fund), with the effect of divesting the assignor of all control thereof, or authority to deal therewith or to revoke the appropriation, although the time of its enjoyment is postponed."

We are convinced that the record amply supports the finding of the referee that "relief vouchers or checks and the proceeds thereof that were collected by the Trustee were not assigned by the bankrupts to the petitioner * * * but were,

at the time of the filing of the petition in bankruptcy in this cause, together with the proceeds thereof, property of the bankrupts and not the property of the petitioner, and they, therefore, passed to the Trustee as assets in said estate, free and clear of any claim of the petitioner."

Order affirmed.