### WHEELER v. WALTON & WHANN CO.

(Circuit Court, D. Delaware. March 19, 1896.)

No. 157.

INSOLVENT ESTATES—COLLATERAL SECURITIES.
    When a creditor of an insolvent estate holds collateral securities for his debt, he is not required to exhaust his remedy upon such securities, nor to surrender them to the assignee or receiver administering such assigned estate, before receiving a dividend therefrom.

Bradford, Vandegrift & Byrne, for receivers.
W. C. & A. W. Spruance, for the bank.

WALES, District Judge. By a decree of this court, made on June 5, 1894, the defendant company was declared to be insolvent, and on the same day receivers were appointed to take charge of their affairs. The receivers are now ready to make a pro rata distribution among the creditors of so much of the assets of the company as have been collected up to the present time, and as are applicable for that purpose; but, before making such distribution, they ask the instruction of the court on exceptions which have been filed to the claims of such creditors as hold collateral securities for the payment of the debts due to them. The case presented for the special consideration of the court is that of National Bank of Wilmington and Brandywine, which at the time of the appointment of the receivers was a creditor to a very large amount, for which it held collateral security, consisting chiefly of bills receivable. By far the greater portion of these securities have been paid and the moneys received from them have been credited to the company on the account between it and the bank, leaving a balance now due to the bank of $5,912.37. The securities still remaining in the hands of the bank have no market value, and have not been appraised. Their face value is equal to the amount on which the bank is claiming a pro rata dividend. The receivers object to the payment of the bank's claim until it shall have exhausted its remedies against the collateral securities which it still holds, or until it shall surrender these securities to the receivers, to be added to the general fund for distribution among all the creditors, and without giving any undue advantage to one class of creditors over another. The bank promises to use all diligence in collecting the unpaid securities, and in

applying the proceeds to the payment of its debt, and, after that has been done, to surrender the securities which may be left to the receivers.

It is a general rule that an assignee for the benefit of creditors holds the property assigned subject to the same equities as the debtor held it, and to a certain extent the same rule applies to receivers appointed by a court of equity to take charge of an insolvent estate, and distribute its assets. To determine the question raised by the exceptions, it is only necessary to ascertain the rights of a creditor occupying the position of the bank; and this question must be decided according to the rules and practice which have been settled and recognized by courts of equity, without reference to statutory requirements. "It is a settled principle of equity that a creditor holding collaterals is not bound to apply them before enforcing his direct remedies against the debtor." Lewis v. U. S., 92 U. S. 623; Kellock's Case, 3 Ch. App. 769. This equitable rule is the natural result of the contract entered into between a lender and a borrower of money by which the parties agree that the creditor shall have, in addition to the personal obligation of the debtor, the possession of certain specific property which is to be applied to the repayment of the debt, or any part thereof, which the debtor is unable to pay. Thenceforth the debtor has no control over the collaterals which he has deposited with the creditor, until the debt has been fully satisfied; and in the meantime, when the debt has matured, the creditor can take proceedings for its recovery either against the collaterals or against the debtor. It may happen that the debtor may be able to pay a part of the debt, in which case the creditor may apply so much of the collaterals as will pay the balance, or the creditor may dispose of all the collaterals, and collect the balance of the debt from the debtor.

The law is clearly stated in Jones, Pledges, § 590:

"In short, in the case of a pledge, just as in the case of a mortgage, a creditor may use any remedy he has against the debtor or his property for the collection of his principal debt, without destroying or impairing his security for the debt, until it is actually paid. A creditor is entitled to hold his securities, whatever they may be, until he gets his pay. The securities belong to him, and he may enforce the debt without surrendering them. * * * It is of the very nature of collateral security that it may be resorted to for a satisfaction of the principal debt, if its payment shall not be otherwise obtained."

It is a mistake, therefore, to suppose that the bank will not be entitled to a dividend until it has exhausted the securities or surrendered them. The twentieth section of the bankrupt act of 1867 (since repealed) required the creditor to sell, release, or deliver up his collaterals before he could prove any part of his debt; but that requirement was never applicable outside of that law. Bisp. Eq. § 343.

Under an assignment for the benefit of creditors, which is virtually the case now before the court, a creditor holding notes of third persons as collateral security, by collecting those notes before a dividend is made, must credit the amount collected upon the principal debt, and take a dividend upon the remainder only of the debt. He cannot collect the collaterals, and then claim a dividend upon the principal debt as it was at the time of the assignment (Jones,

Pledges, § 587), although some of the authorities go to that extent, with the proviso, that, in no event, will the creditor be allowed to receive more than his original debt (People v. E. Remington & Sons, 121 N. Y. 328, 24 N. E. 793). There would be no more inequality of distribution among creditors by allowing the claim of the bank than in applying the proceeds of the sale of the mortgaged real estate of an insolvent to the payment of the debt due to the mortgagee. In either case the creditor would only receive the fruits of his diligence and prudence in taking security for his debt. The opinion of Chancellor Wolcott, in Re Polk & Lord Chemical Co.,[1] cited by the receivers' counsel, has no direct application to the present case. The facts were entirely different. Mrs. Lord was an execution creditor of the Chemical Company, and the sheriff had levied on certain personal property of the defendant before the appointment of the receivers. The chancellor decided that the proceeds of the sale of the property which had been taken in execution should be applied to Mrs. Lord's judgment, but that she could have no priority over the unsecured creditors in the distribution of the general fund. The chancellor was asked to decree the payment of the balance of Mrs. Lord's debt according to the rule for the distribution of intestate's estates, as regulated by the statute of this state, under which judgment creditors take precedence of simple contract debtors; and this he refused to do. Mrs. Lord's judgment was in no sense a collateral security, and the chancellor merely decided that the statute of Delaware, regulating the settlement of intestate's estates, did not apply to the distribution of an insolvent's estate in a court of equity. The exceptions are overruled.

NOTE. Since the above opinion was filed, the attention of the court has been called to the recent case of Levy v. Bank (Ill Sup.; Oct., 1895) 42 N. E. 129, in which the identical question of the right of a creditor, holding collaterals, to a dividend of the assets of an insolvent debtor, was involved. In the case referred to, the supreme court of Illinois, on facts precisely like those stated above, except as to amounts, decided that "the amount upon which the secured creditor is entitled to receive dividends from the assets of the insolvent estate is the amount actually due to the creditor when he files his proof of claim, or presents his claim under oath. The subsequent hearing upon objections or exceptions should be directed to the inquiry as to what was due at that date. The amount due at that date is to be ascertained by the deduction from the principal debt of all payments made before that date, whether realized from collaterals or otherwise, but amounts realized from collaterals after that date are not to be deducted, subject, always, to the qualification that the dividends received from the general assets and the amounts realized from the collateral security shall not together exceed the amount due the creditor upon his claim." ,