ELLEN STANLEY *et al.*

*v.*

THE CHICAGO TRUST AND SAVINGS BANK.

*Filed at Ottawa November 9, 1896—Rehearing denied March 6, 1897.*

1. VARIANCE—*difference between amount claimed on foreclosure of mortgage and amount found due is not a variance.* A complainant, on foreclosing a trust deed, is entitled to a decree for the amount due; and the fact that the proof shows that the indebtedness is less than the deed calls for, and is evidenced by other notes than those named therein, is not such a variance as defeats his right to recover what is actually due.

2. USURY—*the remitting of all interest eliminates question of usury.* The question whether a plaintiff has charged usurious interest on money loaned is eliminated from a suit on the note evidencing the indebtedness by the taking of judgment for the principal sum alone.

3. SAME—*pleading—facts constituting usury must be averred.* It is not sufficient, either at law or in equity, to plead in general terms that a transaction was usurious, but the facts relied upon as constituting usury must be set forth.

*Stanley* v. *Chicago Trust and Sav. Bank,* 61 Ill. App. 257, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

This was a bill brought by the Chicago Trust and Savings Bank, a corporation, in the Superior Court of Cook county, to foreclose a trust deed given by Ellen Stanley and Philiskey E. Stanley, her husband, to the Title Guarantee and Trust Company, trustee. The trust deed bears date the 10th day of February, 1893, and purports to have been given to secure the payment of a principal note of the same date, executed by appellants, for the sum of $10,000, with interest thereon at the rate of six per cent per annum, payable semi-annually, which interest was evidenced by four coupon interest notes of $300 each, said principal note being payable, on or before two years after date thereof, to the order of the makers, and by them endorsed in blank.

The defendants, P. E. Stanley and Ellen Stanley, put in an answer to the bill, in which they admit they made the $10,000 note named in the bill and the four coupon interest notes attached, but deny that the notes were given for value received; admit the giving of the trust deed to the Title Guarantee and Trust Company, conveying the premises in question; deny that said principal and interest notes were signed and transferred to the complainant for valuable consideration and are now held and owned by it, but aver that the same were owned by D. H. Tolman, president of said Chicago Trust and Savings Bank; that Tolman made said transaction individually; that the Chicago Trust and Savings Bank and D. H. Tolman were in fact and legal effect one and the same; that said transaction was originally tainted with usury, and that defendants were compelled to pay interest on said money as they received it under said original note of $10,000, at the rate of five per cent per month; that

at the time of making said note for $10,000 only the sum of $5000 was thereby paid and intended to be paid and advanced on said note, and that from said $5000 the sum of $1200 was thereupon taken by said Tolman and applied by him on the payment of certain shares of capital stock of said Chicago Trust and Savings Bank, which stock said defendants were compelled to purchase at the rate and price of $200 per share, its par value being $100 and its actual value being nothing; that the necessities of defendants were such at the time of making the said $10,000 note that they were compelled to submit to the dictates of said Tolman; that said stock in said Chicago Trust and Savings Bank has always been retained in possession of said Tolman or said bank, and has never been in possession of defendants, and they hereby repudiate said pretended purchase of stock; that upon a fair accounting, with interest on the advances at the rate of six per cent per annum, there is not due to said Tolman at this date, including principal and interest, more than $3900, which sum defendants aver they are ready and willing to pay, and hereby offer and tender.

To the answer complainant filed a replication, and on the hearing on the pleadings and evidence the court entered a decree in favor of complainant for $6105.67, which, on appeal, was affirmed in the Appellate Court.

John S. Brown, (Oliver & Mecartney, of counsel,) for appellants.

Ashcraft, Gordon & Cox, for appellee.

Mr. Justice Craig delivered the opinion of the court:

The following grounds are relied on by appellants to reverse the judgment of the Appellate Court: First, the relief given is not in accordance with the prayer of the bill, and the proof and decree do not conform to the allegations of the bill; second, said $10,000 note, the coupons thereto attached and the trust deed securing the same,

were given to the bank as collateral security for money borrowed from the bank by P. E. Stanley, and for no other purpose, and the decree should not have included any part of the notes given by Stanley for bank stock; third, the whole transaction between Stanley and the bank was usurious, and in no event should the decree have been for more than the amount of money actually loaned by the bank to Stanley, together with legal interest, less the $1750 paid by Stanley to the bank. The points relied upon will be considered in the order made.

The bill alleges the execution of the $10,000 note and the four coupon notes, and that to secure the payment thereof appellants, by deed of trust dated February 10, 1893, conveyed to the Title Guarantee and Trust Company certain real estate to secure the payment of the notes. It is also alleged that the complainant is the owner and holder of the notes, they having been assigned to it. The bill prays for an accounting, that Ellen and P. E. Stanley be decreed to pay complainant the sum found to be due, together with costs, taxes and solicitor's fees, and that the premises be sold to satisfy the amount due complainant. The bill also contains a prayer for general relief.

The proof showed that the $10,000 note, and the coupon notes thereto attached, were transferred to the bank as collateral security to secure certain other notes executed by the defendants to the bank, and it is contended that the decree of foreclosure for the amount of these notes was not authorized by the allegations of the bill. We do not concur in that view. The bill was brought to foreclose the deed of trust given to secure the $10,000 note and coupons. Complainant, as holder of the notes and deed of trust, was entitled to foreclose for whatever amount was due it on the deed of trust, and the fact that the proof showed that the indebtedness was less than the amount named in the deed of trust, and was evidenced by other notes, did not forbid a decree for the amount actu-

ally due on an accounting from the defendants to the complainant. If this deed of trust had been executed by a third party, and turned over by the defendants to the complainant as collateral security to secure a certain indebtedness due from defendants to complainant, the latter would have been entitled to foreclose against the third party for the full amount of the deed of trust, and the amount over and above its debt would have been held for the benefit of the pledgor. But here, as the collateral was against the pledgor, it was unnecessary to take a decree for any greater sum than the evidence showed was actually due from the defendants to complainant. We fully recognize the rule that the allegations of a bill and the proof must correspond; but there was no such departure from that rule here as to authorize a reversal of the decree.

As respects the second point made by appellants, that the $10,000 note and coupons and trust deed were only turned over to secure money actually loaned to the defendants by the bank, appellants, as we understand the record, misapprehend the facts presented by the record. The note of October 26, given by defendants to the bank, after describing the $10,000 note and trust deed, contains the following further provision: "It is further expressly understood and agreed that the above collateral is also put up and pledged as security for any other note or indebtedness which the holder hereof now has or may hereafter have against me." This provision is sufficiently broad to embrace the notes given for the stock as well as the note or notes given for money actually loaned. Moreover, the master in chancery expressly found, as appears from his report, that the deed of trust was transferred to complainant to secure the nine $200 notes given for the bank stock.

The next question relied upon to reverse the decree is, that the transaction was tainted with usury. So far as the money actually borrowed is concerned, we are sat-

isfied that the defendants paid a greater rate of interest than is authorized by the statute.   Upon this branch of the case the master in chancery reported as follows: "It appears, from the evidence, that while said $10,000 note was given for that sum nominally, in fact the defendants Stanley did not receive that sum of money, but that about April 26, 1893, they received from the complainant $4875 for the period of thirty days, and executed therefor a note for $5000, due in thirty days; that about May 26, 1893, defendants Stanley, being unable to pay said $4875 and interest, borrowed from said complainant the further sum of $650 in cash and $200 as a first payment on ten shares of the capital stock of complainant bank, making $850 additional, which defendants Stanley agreed to pay in thirty days from that date, and also renewed the $5000 note for thirty days, and gave for the $850 so borrowed an additional note of $1000; that on June 26, 1893, when said $5000 note and $1000 note became due, defendants were unable to pay the same, and gave a new note for $6000 and paid the complainant $150 in cash and took up their two notes previously given; that on July 26, 1893, when said $6000 note became due, defendants Stanley renewed the same and paid complainant the further sum of $150; that on August 26, 1893, when said note became due, said defendants Stanley, being unable to pay, again renewed the said note for thirty days and paid the further sum of $150; that again, on September 26, 1893, when said $6000 note became due, defendants Stanley renewed the same and again paid the sum of $150 in cash; and again on October 26, 1893, when said $6000 note became due, defendants Stanley were unable to pay the same, and renewed it for thirty days and paid the complainant $150."

The master in chancery, in making his report, computed interest at six per cent on the amount of money actually received by the defendants and deducted all payments made, and to the balance he added the taxes which had been paid and the four notes remaining unpaid

which had been given for bank stock. But the decree was not rendered for this amount. Appellee deducted all interest on the money loaned and took a decree for $6105.67,—the amount remaining after the exclusion of interest. This action on the part of the complainant eliminated the question of usury from the case. It appears, however, that when the first note given by the defendants for $5000 became due, on May 26, they were not able to pay, and not only desired to renew the note, but also applied to borrow of the bank $1000 additional. The bank refused to loan this additional sum unless the defendants would purchase ten shares of the bank stock. This the defendants agreed to do, and the purchase was made at $200 per share. There was paid cash down $200, and nine notes, for $200 each, were executed for the balance of the purchase money, maturing at a future day. Four of these notes remained due and unpaid when the bill was filed, and the amount thereof was included in the decree. The sale of the bank stock may have been a shift or device resorted to by the bank to obtain usurious interest and conceal or cover up the usurious transaction, but we do not regard the evidence sufficient to establish that fact. But if it were sufficient, a fatal objection to the defense interposed is, the answer fails to set up facts showing wherein the usury consists, with that degree of certainty required by law. (*Mosier* v. *Norton*, 83 Ill. 519; *Goodwin* v. *Bishop*, 145 id. 421.) In the latter case it was held that it is not sufficient, at law or in chancery, to plead in general terms that the transaction was usurious. The facts constituting the usury must be set forth.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*