# Selma Bridge Company, *et al.* v. Harris.

*Bill in Equity to Compel Transfer of Stock in Corporation.*

(Decided February 13, 1902.)

1. *Pledges; construction of transfer.*—Where certificates of stock are transferred to a bank "to secure the payment at maturity of" a certain note, "and after its payment to secure any other indebtedness," such certificates are collateral security for any debt from the transferror to the bank existing at the time the note should be paid, whether such debt was in existence at the date of the transfer or not.

2. *Pledge; when not released by renewal of debt and of transfer; when security for future indebtedness.*—Where certificates of stock were transferred to a bank "to secure the payment at maturity" of a certain note "and after its payment to secure any other indebtedness," and the note and transfer of stock were afterwards renewed by transfer written under the original transfer as follows: "The above has been renewed from time to time in different shape, and the above stock is security in the hands of said bank for the same and any other indebtedness." *Held:* That the renewal of the transfer did not operate to release the security to any extent, and that the security was good not only for the note, and for any other debt owing the bank when that note should be paid, but also for all future indebtedness of the transferror to the bank.

3. *Transfer of stock in corporation; notice of; when shown.* Where the president of a corporation has shown a keen interest in the affairs of a bank in the hands of its assignees, his company being a creditor to a large amount, and has continuously made efforts to find out its assets, and has received from the assignees of the bank a statement showing among

its assets certain certificates of stock in another corporation held as collateral, and he admits having received the statement and does not deny having read it, and he was informed by the bank's assignees that the certificates were held by the assignees as collateral for a certain debt to the bank,—the corporation, of which he is president, and he individually are held to knowledge that said certificates were held by the bank as collateral for said debt and have passed to the bank's assignees.

4. *Bill to compel transfer of stock on books of corporation; when relief will not be granted.*—Where a bill was filed by the purchaser under an execution of stock in a private corporation standing on the books of the company in the name of the judgment debtor, seeking to compel a transfer of said stock to complainant and a recognition of complainant in the payment of dividends, relief will not be granted where the evidence shows that at the time of the issue and levy of said execution the complainant and the judgment creditor, a corporation of which complainant was president, had notice that said stock had been transferred as collateral security to a bank for a debt owing to it by the judgment debtor.

APPEAL from Selma City Court.

Heard before Hon. J. W. MABRY.

The bill was filed by Harris against Selma Bridge Company, a corporation, Simon Maas, and L. E. Jeffries and Emil Gilman, Jr., as assignees of the Commercial Bank of Selma. The bill and evidence showed that complainant had purchased under execution issued on a judgment in favor of the Louisville Banking Company and against Simon Maas, certain shares of stock in the Selma Bridge Company, standing on its books in the name of Maas, and had requested the Selma Bridge Company to transfer said stock to him on its books and to pay to him certain dividends due thereon, which demand had been refused. The assignees of the bank claimed that the stock had been transferred to the bank as collateral security for a debt of Maas to the bank and had come into their hands as assignees, and that Harris and the Louisville Banking Company (of which he was president) had notice and knowledge of the transfer to the bank at the time of the issuance and levy of the execution. The opinion sufficiently shows the other facts. There was a decree in favor of the complainant, and defendants appeal.

[Selma Bridge Company, *et al.* v. Harris.]

PETTUS, JEFFRIES & PARTRIDGE, for appellants.—(1.) The pledge secured all debts, present and future, of Maas to the bank.—3 Am. & Eng. Ency. Law (1st ed.), 187, 188, note; *Badlam v. Tucker,* 11 Am. Dec. 202; Jones on Pledges, § 361; Jones on Mort., § 374; *Merchants Nat. Bank v. Hall,* 83 N. Y. 338; *Beacon Trust Co. v. Robbins,* 53 N. E. Rep. (Mass.) 868; *Chymer v. Patterson,* (N. J.) 27 Atl. 645; *Wilson v. Caruthers,* 43 S. E. Rep. (Ky.) 684; *Collier v. White,* 97 Ala. 615; 70 Tex. 116; 40 N. H. 253; 5 R. I. 63; 27 N. Y. 351; 22 N. Y. 30; 32 N. Y. 299; 5 Cow. 441; 7 Cranch. 34. (2.) The Louisville Banking Company and Harris, its president, had notice of the transfer to the bank.—*Dittey v. Bank,* 112 Ala. 392; *Bir. T. & Sav. Co. v. Bank,* 99 Ala. 379; *Boggs v. Price,* 64 Ala. 514; *R. R. Co. v. Felrath,* 67 Ala. 189; *Webb v. Robbins,* 77 Ala. 176; *Overall v. Taylor,* 99 Ala. 12; *Pool v. Devers,* 30 Ala. 672; *Hepburn v. Citizens Bank,* 2 La. Ann. 1007; *C. & A. R. Co. v. Gretzner,* 46 Ill. 74.

J. R. SATTERFIELD, *contra,* cited *Wetumpka Bridge Co. v. Kidd,* 27 So. Rep. 431; s. c. 124 Ala. 242.

McCLELLAN, C. J.—The certificates of the Bridge Company's stock were originally transferred by Maas to the Commercial Bank on the occasion of his executing a note for $1,500 to the bank for the money then borrowed, and the transfer was in terms "to secure the payment at maturity of said note and after its payment to secure any other indebtedness" of Maas to the bank. This note and this transfer of the stock were made on December 3rd, 1887, and the note matured on April 4th, 1888. It cannot, we think, be seriously doubted that this transfer of the certificates of stock made them collateral security at least for any debt from Maas to the bank existing at the time the note should be paid whether such debt was in existence at the date of the transfer or not; and hence to this extent at least the transfer was to secure indebtedness arising in the future. This $1,500 had not been paid on April 6th, 1889, but prior to that time the note evidencing it had been renewed in one way or another. So that at that date the

bank held the stock as collateral to the $1,500 note, and to any other debt then existing or which should come into existence against the time of its payment, as security for then existing debts and for such future debts as should be incurred by the time of the happening of a specified event. Whether that event has ever happened, we are not advised, probably not. But be that as it may, it is to the last degree unreasonable and improbable that the bank upon a further renewal of the $1,500 debt should without consideration have surrendered this collateral security for future debts of the class referred to, and the conclusion that it did so is not to be lightly or without clear indication of such intent arrived at. The renewal of the transfer of the stock made on the date last named, April 6th, 1889, affords no such indication. That transfer, having reference to the $1,500 note and the original transfer, under which it appears to have been written, is as follows: "The above has been renewed from time to time in different shape, and the above stock is security in the hands of said bank for the same and any other indebtedness." The situation and dealings of the parties were such as would seem to naturally call for a broadening of the pledge rather than to narrow it; and certainly there is nothing in this last transfer or in any circumstance disclosed to afford any ground for an inference that the bank upon further accommodating Maas in respect of the $1,500 debt, surrendered to any extent the security afforded by the transfer of these certificates of stock, and to have taken a transfer as security only for then existing debts would have been to surrender it as a security for debts to be incurred up to the payment of the $1,500 note. To the contrary, it would seem most reasonable, proper and just for the bank in consideration of the further accommodation it extended to Maas, to require him to broaden the transfer of the certificates so as that they would stand security not only for the $1,500 and for any other debt owing to the bank when the $1,500 should be paid as they had done from the first, but for *all* future indebtedness of Maas to the bank; and we feel that we are declaring the intention of the parties in holding that under the last transfer of the

certificates the bank held them as collateral security for
the debt Maas owed it at the time of the assignment.

The other question in the case necessary to be passed
upon is whether the Louisville Banking Company
through its president, the complainant Harris, or other-
wise, had knowledge or notice of the fact that the as-
signees of the Commercial Bank held these certificates
of stock as collateral security at the time the stock as
it stood on the books of the Bridge Company in the
name of Maas was levied on under a judgment recov-
ered by said Banking Company against Maas, and
indeed at the time of the issuance of the execution.
We shall not discuss the evidence on this issue at any
length. The burden of proving notice, we will assume,
was upon the respondents. We think that burden has
been discharged. There is direct and affirmative evi-
dence on the part of the respondents, the testimony
of one of the assignees that the complainant, represent-
ing the Banking Company, was informed that the as-
signees held these certificates as collateral to Maas' debt
to the bank. And this testimony is strongly corrobo-
rated by the circumstances, that Harris was keenly in-
terested in the affairs of the Commercial Bank in the
hands of the assignees, his company being a creditor to
a large amount, that he had come to Selma and re-
mained a week endeavoring to find out what assets had
come to the assignees, that after he left there he con-
tinued solicitous about the matter, and wrote to the
assignees that he had heard that a statement of the
assets of the defunct bank had been prepared and pub-
lished in a newspaper, and requesting that the state-
ment so published should be sent to him. It was sent.
He received it. And it showed that among the assets
of the bank were these certificates of stock held as col-
laterals. He admits receiving this statement. He does
not deny reading it. Indeed his whole testimony,
against the positive, affirmative and circumstantial evi-
dence of one of the assignees and the facts as to the
statement just referred to, amounts in its last analysis
to no more than that he does not remember to have ever
had knowledge or notice of the transfer of the certifi-
cates by Maas to the Commercial Bank. Upon this
state of the evidence we reach the conclusion that Har-

ris and the Louisville Banking Co. had, not only notice of the assignees' rights in the premises when the stock was levied upon, but *knowledge* that certificates for twelve shares of the stock of the Selma Bridge Co. had been transferred by Maas to the Commercial Bank and passed from the bank to its assignees. With this knowledge, they, upon finding twelve shares of the stock standing on the books of the Bridge Company in the name of Maas were put upon notice that this was the same stock held by the assignees of the bank as collateral security, especially as the transfer of certificates of stock—and not the stock itself on the books of the issuing company—is a recognized and customary mode of pledging the stock to secure debts.

We are, therefore, of opinion that complainant has no title to this stock as against the assignees of the Commercial Bank, and that he is not entitled to have the Bridge Co. recognize him as the owner of said stock, and register the sheriff's transfer to him on the books of said company or to a certificate of the same or to the dividends which have been declared upon it. The decree of the city court will be reversed, and a decree will be here rendered denying relief and dismissing the bill.

Reversed and rendered.

Haralson, J., not sitting.