COMMERCIAL & SAVINGS BANK v. ROBERT H. JENKS LUMBER CO.

(Circuit Court, N. D. Ohio, E. D. December 21, 1911.)

No. 8,123.

1. BANKS AND BANKING (§ 179*)—LOANS—SECURITY.
    Where a note given to a bank for a loan of $20,000 declared that the maker had deposited collateral as security for the payment of the note and every other liability of the undersigned to the bank, direct or con-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tingent, due or to become due, or which might thereafter be contracted or existing, followed by a specific description of the collateral, such collateral was pledged to secure not only the $20,000 note, but also the other indebtedness of the maker to the bank.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 179.*]

2. CORPORATIONS (§ 566*)—INSOLVENCY—SECURED CLAIMS.

Where an insolvent corporation deposited collaterals with claimant bank as security for its entire indebtedness, the bank on administration of the corporation's estate in equity was entitled to prove its claim for the full amount of its debt and to receive dividends up to the balance due after crediting the proceeds of the sale of the collaterals.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2283–2286; Dec. Dig. § 566.*]

In Equity. Action by the Commercial & Savings Bank against the Robert H. Jenks Lumber Company. Judgment for complainant.

W. H. Marlatt, for Union Nat. Bank.

Frederick L. Taft, for other banks.

Holding, Masten, Duncan & Leckie, for receiver of Robert H. Jenks Lumber Co.

DAY, District Judge. The receiver of the Robert H. Jenks Lumber Company asks instructions of the court upon the following state of facts:

That in January, 1910, the Lumber Company was indebted to the Union National Bank of Cleveland, Ohio, in the sum of about $42,500. That at said time the Lumber Company borrowed from the bank the further sum of $20,000, and then and there made and delivered to the bank its promissory note in the amount of $20,000, and at the same time delivered to the bank certificates for 304 shares of the capital stock of the Cuyahoga Lumber Company. That in said note it was stated that said shares of stock were delivered to said bank as collateral security "for the payment of this and for other liabilities of the undersigned to said bank, direct or contingent, due or to become due, or which may hereafter be contracted or exist."

That the aforesaid note of $20,000 was, from time to time, renewed by other notes containing the same provision made by said Lumber Company and delivered to said bank, the last renewal note being dated January 30, 1911, and during all of which time the bank retained possession of the certificates of said shares of stock. That the aforesaid 304 shares of the capital stock of the Cuyahoga Lumber Company was of a market value in excess of $30,000, and that as receiver he is willing to pay the aforesaid $20,000 with accrued interest thereon, in consideration of the surrender to him by the bank of said note and said certificates for said 304 shares, but that the bank is unwilling so to do and claims that said certificates were delivered to it as collateral security for the payment of all indebtedness of the Robert H. Jenks Lumber Company to it, and that by virtue of the provisions of said note it is entitled to retain possession of said certificates until the full value of said shares of stock has been paid to it, and upon failure to pay said full value it has full right

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to exercise its lawful rights as pledgee, in accordance with the provision in said note contained, and to sell and dispose of the shares of stock and to apply the full amount realized from such sale toward the liquidation of the aforesaid indebtedness to it, which the bank claims was $63,508.55, and the bank asks that its claim be allowed in full without first applying the collateral or the proceeds thereof in payment of the indebtedness.

[1] A copy of the note referred to in this petition of the receiver, is as follows:

"$20,000.00.                              Cleveland, Ohio, Jan. 30th, 1911.

"Sixty days after date, for value received, we promise to pay to the order of the Union National Bank of Cleveland, Ohio, at its office twenty thousand dollars, together with interest at the rate of six per cent. per annum after maturity until paid; the undersigned having herewith deposited as collateral security for the payment of this and every other liability of the undersigned to said bank, direct or contingent, due or to become due, or which may hereafter be contracted or existing, the following property, namely:

> 304 shares the Cuyahoga Lumber Co. stock
> Ctfs #176 to 186 inc. 25 shares each
> "       187            29 shares

together with all other securities in the possession of said bank belonging to the undersigned or in which the undersigned has an interest, hereby agreeing to deliver to said bank additional securities to its satisfaction upon demand of said bank, also hereby giving to said bank a lien for the amount of all said liabilities of the undersigned to said bank upon all property or securities which now are or may hereafter be pledged as collateral with said bank by the undersigned, or in the possession of said bank in which the undersigned has any interest, and, also upon any balance of the deposit account of the undersigned with said bank. On the nonperformance of this promise, or upon the nonpayment of any liability above mentioned, or upon failure of the undersigned forthwith to furnish satisfactory additional securities on demand, at the option of said bank or of its president or cashier, this obligation shall become immediately due and payable less a proper rebate of interest, and then and in every such case full power and authority are hereby given to said bank to sell, assign and deliver the whole of said securities or any part thereof or any substitutes therefor or any addition thereto through the stock exchange or broker or at private sale, without either advertisement or notice, the same being hereby expressly waived; or said bank, at its option, may sell the whole or any part of said securities or property at public sale upon ten days notice, published in any newspaper printed in the city of Cleveland, at which public sale said bank itself may purchase the same or any part thereof free from any right of redemption on the part of the undersigned, which is hereby expressly waived and released. In case of sale for any cause, after deducting all costs and expenses of every kind, said bank, may apply the residue of the proceeds of such sale as it shall deem proper, toward the payment of any one or more or all of the liabilities of the undersigned to said bank, whether due or not due. returning the overplus, if any, to the undersigned, who agree to be and remain liable to said bank for any and every deficiency after application as aforesaid. upon this and all other of said liabilities; the undersigned hereby authorizing the transfer or assignment of said securities and property to the purchaser thereof.

> "The Robert H. Jenks Lumber Co.
> "A. B. Lambert, Treas."

It is the claim of the Union National Bank that it has a right to hold the 304 shares of the capital stock of the Cuyahoga Lumber Company as collateral, not only for the $20,000 set forth in the note, but also for the other indebtedness of the Jenks Lumber Company to the bank at the time of the loaning of the $20,000 mentioned in

this note. It is also contended by the bank that it is entitled to file its full claim with the receiver and share pro rata with the unsecured creditors in the general distribution.

Two questions then arise: First, was this collateral given to secure the payment of the $20,000 note alone, or was it given to secure the payment of this note and the other indebtedness of the Lumber Company to the bank? Second, can the Union National Bank share pro rata with the unsecured creditors in the general distribution upon its entire debt, or must it first exhaust its collateral and prove up its claim for the remaining balance?

In my opinion, after a careful consideration of the entire situation presented by the petition of the receiver and the briefs filed, the parties intended that this collateral was given to secure not only the $20,000 note, but also to secure the other indebtedness of the Lumber Company to the bank. The words used in the note appear to be plain and unambiguous, for in the note it is stated:

"The undersigned having herewith deposited as collateral security for the payment of this and every other liability of the undersigned to said bank, direct or contingent, due or to become due, or which may hereafter be contracted or existing."

Then the collateral is specifically described.

Considering the fact that this Lumber Company was a large borrower of the bank, and considering this plain and precise language, which could not be any plainer, there seems but little doubt but that the Union National Bank has a right to hold these 304 shares of capital stock of the Cuyahoga Lumber Company as collateral, not only for the $20,000 set forth in the specific note above referred to, but also for the indebtedness of every kind of the Robert H. Jenks Lumber Company to the bank. Language not as comprehensive nor as specific as that employed in this note in question has been held by several of the highest courts of the states to mean that the collateral was not given for the specific indebtedness of the note alone, but for all of the indebtedness. Buchanan v. National Bank, 78 Ill. 500; Selma Bridge Company v. Harris, 132 Ala. 179, 31 South. 508; Merchants' National Bank of Savannah v. Demere, 92 Ga. 736, 19 S. E. 38; Stanley v. Chicago Trust & Savings Bank, 165 Ill. 295, 46 N. E. 273; Boardman v. Holmes, 124 Mass. 438; Leonard v. Administrator of Kebler, 50 Ohio St. 444, 34 N. E. 659.

That this was the understanding of the parties is perhaps made plainer when it is understood that, at the time of this borrowing, Robert H. Jenks was a director of the bank.

[2] The second contention of the bank is that it shall be allowed to file its entire claim and share pro rata with the unsecured creditors in the general distribution. This presents a very interesting question which has been most ably discussed by the respective counsel in this case and in their briefs filed with me. This same question was considered by the Circuit Court of Appeals for this circuit in the case of the Chemical National Bank v. Armstrong, 59 Fed. 372, 8 C. C. A. 155, 28 L. R. A. 231. The opinion was delivered by Judge Taft and was most complete in dealing with the question now under con-

sideration. All of the various authorities were commented upon. The facts in this Armstrong Case arose in connection with an insolvent bank, and the court held that its creditors could not be required, in proving up their claims, to allow credit for any collections made after the date of the declared insolvency, from collateral securities held by them. The court said, in part:

"The right which a creditor of the bank had before suspension of levying an execution to satisfy his judgment is gone, and for it is substituted a fixed and definite interest in the assets as a security for the payment of his debt, which it is the purpose of the banking act to reduce to money and apply on his debt with all convenient speed. We see no reason why this does not apply as well to creditors who hold collateral as to those who are unsecured. It is well settled that the holding of collateral does not prevent a creditor from enforcing his claim in the ordinary way by judgment and execution against a debtor without deduction for his collateral. Lewis v. U. S., 92 U. S. 618 [23 L. Ed. 513].

"When a secured creditor is required by the transfer of the assets in trust for winding up purposes to forego his right to satisfy his entire debt out of the property of the bank by levy and execution, why should there be substituted for that right anything less than that which unsecured creditors gain by yielding up the same right?

"The secured creditor enjoys precisely the same advantage over an unsecured creditor with respect to the collateral, that he did before the suspension. With reference to obtaining satisfaction out of the general assets of the bank before suspension, their rights are equal. So must their rights be after sequestration of the assets for ratable distribution.

"A secured creditor has two securities for the payment of his debt, one of which he held in common with all the creditors, the other of which he had obtained by lawful contract from his debtor. It is a rule of equity that, where a creditor holds two securities, one of which he has in common with the others, and the other of which he holds for his sole use, he may be required to collect his debt first out of the security for his sole benefit, so that those who hold in common with him may have more to apply to their debts. But this rule can never be invoked where he who has the two securities cannot pay himself in full out of both. He was given the two securities to pay his debt, and he cannot be deprived of this primary equity for the benefit of some one else who is less fortunate in his security. 3 Pomeroy, Eq. Jur. § 1414; Story, Eq. Jur. § 564b. Nor can the bankruptcy act apply to the administration of any estate by the equity side of this court."

Again, in the case of Cook County National Bank v. U. S., 107 U. S. 445, 2 Sup. Ct. 561, 27 L. Ed. 537, Mr. Justice Field, referring to the bankruptcy law, said:

"That enactment was dealing with the estates of persons adjudged to be insolvent under that law, and covers only the distribution of their estates; it has no further reach.

"The rule in bankruptcy was not the rule in equity because it ignored the rights belonging to the secured creditor before the bankruptcy took place, and materially modified and reduced the advantage over unsecured creditors which in the original contract of pledge the debtor had intended to secure him.

"The great weight of authority in England and this country is strongly opposed to the view that a creditor with collateral should be deprived of the right to prove for his full claim against an insolvent estate."

This question was again considered in the case of Merrill v. National Bank of Jacksonville, 173 U. S. 131, 19 Sup. Ct. 360, 43 L. Ed. 640, Mr. Justice Field in his opinion stating:

"We concur with the court (Justice Brown and Circuit Judges Taft and Lurton in Chemical National Bank v. Armstrong, 59 Fed. 372 [8 C. C. A. 155,

28 L. R. A. 231]) in the proposition that the assets of an insolvent debtor are held under insolvency proceedings in trust for the benefit of all his creditors, and that a creditor on proof of his claim acquires a vested interest in the trust fund. A secured creditor is not to be cut off from his right in the common fund because he has taken security which common creditors have not. The creditor looks to the debtor to repay the money borrowed and to the collateral to accomplish this in whole or in part, and he cannot be deprived either of what his debtor's general ability to pay may yield or of the particular security he has taken.

"We think the collateral is security for the whole debt and every part of it, and is applicable to any balance that remains after payment from other sources as to the original amount due; and that the assumption is unreasonable that the creditor does not rely on the responsibility of his debtor according to his promise.

"The rule in bankruptcy goes on the principle of election; that is to say, the secured creditor was not allowed to prove his whole debt unless he gave up any security held by him on the estate which he sought to prove, * * * but it was only under bankruptcy laws that such election could be compelled. Tayloe v. Thomson, 5 Pet. 358-369, 8 L. Ed. 154.

"Whatever Congress may have authorized to enact by reason of its power to pass uniform laws on the subject of bankruptcies, it is very clear that it did not intend to impinge upon contracts existing between creditors and debtors, yet it is obvious that the bankruptcy rule converts what on its face gives the secured creditor an equal right with the other creditors into a preference against him, and hence takes away a right which he already had. This a court of equity should never do unless required by statute, at the time the indebtedness was created.

"Our conclusion is that the claims of creditors are to be determined as of the date of the declaration of the insolvency, irrespective of the question whether particular creditors have security or not. When secured creditors have received payment in full, their right to dividends and their right to retain their securities cease; but collections therefrom are not otherwise material. Insolvency gives unsecured creditors no greater rights than they had before."

This decision was followed by the Supreme Court of the United States in the case of Aldrich v. Chemical National Bank, 176 U. S. 618, 20 Sup. Ct. 498, 44 L. Ed. 611.

Counsel for the receiver, in their brief comment upon these decisions, very ably endeavor to distinguish them from the situation presented by the matter now under consideration.

The contention is made that both the Lumber Company and the bank are engaged in doing business in Ohio; that the collateral contract is an Ohio contract and would ordinarily be construed and enforced according to the Ohio laws; furthermore, that the bankruptcy law would compel the bank to release the pledge before it could prove for the whole amount or retain its security account for its value and prove for the balance after deducting the value. They assert that the case of Bank v. Armstrong, 59 Fed. 372, 8 C. C. A. 155, 28 L. R. A. 231, was decided before Congress enacted the present bankruptcy law, and that the decision in this Armstrong Case was solely upon the question of the right of a creditor under the national bank act.

These contentions are all worthy of serious consideration, but obviously the rule of law to be applied in a state court and the rule as applicable in a bankruptcy court and the manner of proving secured claims differ greatly. As was said by Mr. Justice Field in the case of

Cook County National Bank v. U. S., 107 U. S. 445, 2 Sup. Ct. 561, 27 L. Ed. 537, referring to the bankruptcy law:

"That enactment was dealing with the estates of persons charged to be insolvent under that law, and covers only the distribution of their estates; it has no further reach."

And the application of the bankruptcy law in reference to the proving of this claim would not be an equitable application of the law. It would not be a rule in equity, and this matter arises in an equity court, because the bankruptcy law, in so far as it applies to a claim like the one in question, ignores the rights belonging to the secured creditor before the bankruptcy takes place, and modifies and reduces the advantage over unsecured creditors which in the original contract which the Lumber Company made had been intended to secure the bank.

As was said by Judge Taft in the case of Chemical National Bank v. Armstrong, after he had considered all of the authorities bearing on the situation, such as the one which is before me:

"The exact point which is common to all the foregoing authorities, and which they all sustain, is that a creditor who has proved his claim against an insolvent estate under administration can collect his dividends without any deduction from his claim as proven for collections made from collateral after his proof of claim is filed."

As was said in the case of Wheeler v. Walton & Whann Co. (C. C.) 72 Fed. 967:

"This question must be decided according to the rules and practice which have been settled and recognized by courts of equity, without reference to statutory requirements. 'It is a settled principle of equity that the creditor holding collaterals is not bound to apply them before enforcing his direct remedies against the debtor.' Lewis v. U. S., 92 U. S. 623 [23 L. Ed. 513].

*   *   *

"It is a mistake to suppose that the bank (which was a creditor) will not be entitled to a dividend until it has exhausted the securities or surrendered them. The twentieth section of the bankruptcy act of 1867 (since repealed) required a creditor to sell, release, or deliver up his collaterals before he could prove any part of his debt; but that requirement was never applicable outside of that law. Bisph. Eq. § 343."

So it was held, in London & San Francisco Bank v. Willamette Steam Mill (C. C.) 80 Fed. 226, that the state laws relating to insolvency did not control the federal courts in receivership cases in respect to the right of a creditor holding collateral security to receive dividends without his surrendering his collateral. To the same effect is the case of New York Security & Trust Co. v. Lombard Investment Co. (C. C.) 73 Fed. 537; Doe v. Northwestern Coal & Transportation Co. (C. C.) 78 Fed. 62.

The case of Lewis, Trustee, v. U. S., 92 U. S. 618, 23 L. Ed. 513, which I have before referred to, distinctly holds that in an equity court a creditor holding collaterals is not bound to apply them before enforcing his direct remedy against the debtor.

It seems to me that this is a well-settled principle of law. It works no hardship, but gives to the secured creditor the right which should be his. Were the law otherwise, this right would not be preserved to such a creditor. The bankruptcy act applies only to such estates

as come under its provisions; it was never intended that this act should govern the administration of equitable doctrines by courts of equity.

Bearing in mind that the bankruptcy act was passed for the specific purpose and relates to the administration of estates under that act, and it does not apply to the administration of affairs in a court of equity, no confusion of opposing rules arises, and the courts will have no difficulty whatsoever in administering bankrupt affairs under bankruptcy rules in a court of bankruptcy, and applying well-settled principles of equity to matters arising in a court of equity.

I am therefore of the opinion that this collateral security deposited with the bank was held by the bank for all of the indebtedness of the Robert H. Jenks Lumber Company, and that the Union National Bank should be permitted to prove its full claim and file the same with the receiver for the amount which was due at the time of the insolvency.