**Louis C. McCLURE, Trustee in Bankruptcy of Bruce's Juices, Inc.,**
Appellant,

v.

**The FIDELITY & CASUALTY COMPANY OF NEW YORK,**
Appellee.

No. 15069.

United States Court of Appeals,
Fifth Circuit.

Feb. 18, 1955.

Charles Hamilton Ross and John P. Corcoran, Jr., Tampa, Fla., for appellant.

G. T. Shannon, Tampa, Fla., Shackleford, Farrior, Shannon & Stallings, Tampa, Fla., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

HUTCHESON, Chief Judge.

This appeal from an order in bankruptcy presents the single question of law, whether, upon the undisputed facts,[1] a savings bank deposit, Account No.

---

1. On Sept. 20, 1950, three judgments entered in the United States District Court in favor of the United States against Bruce's Juices, Inc. were appealed. The defendant, desiring a stay, obtained a supersedeas bond in the amount of $1500.00, which was executed on Nov. 1, 1950, by The Fidelity & Casualty Co. of New York, as surety, and Bruce's Juices, Inc., as principal. In connection therewith, Bruce's Juices, Inc. opened a savings ac-

count No. 6842 on said date in the amount of $1500 in its name in The First Federal Savings & Loan Assn. of Tampa, Florida, executed an assignment of the account, and delivered the pass book to the surety. The assignment recited that, in consideration of the execution of the supersedeas bond, the principal assigned to the surety its title and interest in and to said pass book. On the same day, a "Receipt for Collateral Security" was al-

6842, which had been pledged by the bankrupt with appellee in connection with bonds issued by it as surety in November, 1950, may be applied by it to an indebtedness arising out of a subsequently executed bond.

The matter comes up in this way. The referee, determining that the pledge was applicable to and only to the bonds issued in 1950, denied the petition of appellee for an order directing The First Federal Savings & Loan Association to pay the deposit to it, and entered his order [2] ac-cordingly. On petition for review, however, the district judge, concluding [3] that the deposit was, as stated in the collateral receipt, executed by the bankrupt and the surety company in 1950, security for "any and all other indebtedness of the depositor to the company", set aside the order of the referee and ordered that the account was the property of the petitioner and it was entitled to receive the moneys in the deposit account.

The trustee, citing as controlling St. Lucie County Bank & Trust Co. v. Aylin,

so signed by the parties in which, inter alia, it was stated:

"Bruice's Juices, Inc. [named as both Principal and Depositor] * * * hereby deposits $1500 with The Fidelity and Casualty Company of New York, herein called the Company, as collateral security against the liability of the Company, *under any bond or bonds of suretyship in behalf of the Principal named above,* subject to the following conditions:

* * * * *

"2. If * * * in connection with such suretyship the Company shall sustain or incur any loss * * * the Company is hereby authorized * * * to sell said collateral at public or private sale * * * and in the event of such sale or disposition of said collateral, the balance * * * after deducting all costs * * * shall be *applied to the payment:* first, of all loss, costs, damages, expenses, and attorneys' fees or liability therefor, as aforesaid, on account of the suretyship described in the first recital hereof, and of any and all premiums due thereon; second, *of any and all other indebtedness of the Depositor to the Company,* the surplus, if any, to be returned to the Depositor as hereinafter provided." (Emphasis supplied.)

Judgment was entered against Bruce's Juices, Inc. on said appeal on Sept. 8, 1952, and on March 16, 1953, the surety paid the sum of $529.21 to the Clerk of the Court in settlement of the judgment rendered in said cases and in discharge of its liability on said supersedeas bond.

In the meantime, on Jan. 1, 1952, **a** Citrus Dealer's bond was executed by appellee for Bruce's Juices, Inc., and on Dec. 1, 1952, payment of $3000 was made by appellee under the Citrus Dealer's Bond and Bruce's Juices, Inc. became indebted to appellee in said amount. On March 16, 1953, as shown above the col-lateral security which, as shown above, provided that the collateral should first be applied to the 1950 indebtedness, was, in accordance with the provisions of the receipt, applied first in discharge of appellee's liability on said supersedeas bond. *The receipt providing that the collateral security should then be applied to "any and all other indebtedness of the Depositor to the Company",* the appellees, taking the position that the clear language of the agreement between the parties should be followed, *and that the collateral security remaining should be applied* to this other indebtedness, *filed with the referee the petition which initiated these proceedings.* (Emphasis supplied.)

2. This in substance provided (1) that the petitioner deliver the savings bank deposit book to the trustee; and (2) that the trustee pay to petitioner $529.51, the indebtedness due it on account of the Nov., 1950, bonds.

3. As pertinent here, the order reads:
"* * *

"3. That under and by virtue of the said collateral receipt Bruce's Juices Inc. did promise to pay to The Fidelity and Casualty Company of New York any loss which The Fidelity and Casualty Company of New York may have taken on the first bond and 'of any and all other indebtedness'.

"4. That the Referee decided that The Fidelity and Casualty Co. of New York was restricted by the agreement to their loss under the first bond, to-wit, the sum of $529.21.

"5. That from an inspection of the said written agreement between the parties, it appears to the undersigned judge that in addition to the first bond the agreement between the parties takes in 'any and all other indebtedness.' "

94 Fla. 528, 114 So. 438, and the other cases [4] cited by him, is here insisting that the referee was right, the district judge wrong.

The appellee, invoking the provisions of the "Receipt for Collateral Security",[5] insists that, the law of the cases aside, the plain and simple language of the contract between the parties, without equivocation or ambiguity, supports, indeed compels the conclusion and order of the district judge. In addition, commenting upon the inappositeness of the cases cited by appellant as showing the essential weakness of his case, and citing and quoting from authorities,[6] upon which it relies, it urges upon us that, as might be expected from a reading of the language of the receipt, the law of the cases fully supports the order appealed from.

We agree fully with the appellee that on its face and in its context the language "any and all other indebtedness" in the collateral receipt requires the conclusion to which the district judge came, and for which appellee contends. We will, therefore, not labor the matter by extended discussion, but will content ourselves with saying so, and with brief quotations from some of the cases relied on by appellee, which reenforce our conclusion.

With reference to the words "any and all" used in the receipt, the Supreme Court of Florida, in Escambia Land & Mfg. Co. v. Ferry Pass Inspectors & Shippers Ass'n, 59 Fla. 239, 52 So. 715, at page 716, said:

"'Any and all liability' does not mean some of the liability, as, for instance, liability for rental after the decision of the court upon the question mentioned, but any and all liability growing out of or having its existence in the contract whether before or after the decision of the court upon the rights of the White River Association. * * *"

In Hendrickson v. Farmers' Bank & Trust Co., 189 Ark. 423, 73 S.W.2d 725, at page 729, the Supreme Court of Arkansas said:

"A debt created subsequent to the mortgage, being not yet in existence, may not in all cases be clearly indicated; whereas, antecedent debts may always be definitely stated, and for this reason the general expression, 'other indebtedness,' would usually be treated as referring not to an antecedent debt but to one subsequently incurred."

In Selma Bridge Co. v. Harris, 132 Ala. 179, 31 So. 508, where the collateral agreement provided that after payment of the initial obligation, the collateral funds were to be used to secure or pay "any other indebtedness", The Supreme Court of Alabama, holding that this clearly meant any indebtedness existing at the time of the payment said, 31 So. at page 508:

"The certificates of the bridge company's stock were originally transferred by Maas to the Commercial Bank on the occasion of his executing a note for $1,500 to the bank for the money then borrowed, and the transfer was in terms 'to secure the payment at maturity of said note, and after its payment to secure any other indebtedness' of Maas to the bank. This note and this transfer of the stock were made on Dec. 3, 1887, and the note ma-

---

4. Mattingly Lumber Co. v. Equitable Building & Savings Ass'n, 176 Md. 403, 5 A.2d 458; Holston Nat. Bank v. Wood, 125 Tenn. 6, 140 S.W. 31; Bank of Searcy v. Kroh, 195 Ark. 785, 114 S.W.2d 26; Bradburn v. Wyoming Trust Co., 51 Wyo. 73, 63 P.2d 792.

5. See note 1 supra.

6. 72 C.J.S., Pledges, § 28(3), page 44; Escambia Land & Mfg. Co. v. Ferry Pass Inspectors & Shippers Ass'n, 59 Fla. 239, 52 So. 715; Georgia in Exchange Bank of Macon v. Loh, 104 Ga. 446, 31 S.E. 459, at page 461, 44 L.R.A. 372; Henrickson v. Farmers' Bank & Trust Co., 189 Ark. 423, 73 S.W.2d 725, at page 729; Selma Bridge Co. v. Harris, 132 Ala. 179, 31 So. 508.

tured on April 4, 1888. It cannot, we think, be seriously doubted that this transfer of the certificates of stock made them collateral security at least *for any debt from Maas to the bank existing at the time the note should be paid,* whether such debt was in existence at the date of the transfer or not; and hence to this extent at least the *transfer was to secure indebtedness arising in the future.*" (Emphasis supplied.)

The judgment was right. It is affirmed.